ANDREW KIRKPATRICK

*v.*

THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEW
BRUNSWICK et al.

1. The title of a statute, "A further supplement to an act entitled 'An act concerning taxes,'" which regulates the time for the assessment and payment of local taxes, alters the time for the meeting of the commissioners of appeals, and fixes the rate of interest to be paid by delinquents, and deductions to be made for prompt payment, is not a violation of the constitutional provision "that every law shall embrace but one object, and that shall be expressed in its title."

2. A local and special law "regulating the internal affairs of a town and county," is not unconstitutional if it became operative before the adoption of the constitutional provision forbidding such laws.

3. The constitutional requirement that property shall be assessed for taxes under general laws, and by uniform rules, according to its true value, relates only to the assessment of taxes, and in that respect concerns only the designation and valuation of the property to be assessed, and the apportionment of the taxes thereon, and not to the details of the methods whereby taxes are to be assessed and collected, and therefore the fact that a statute differs from the general law as to such details, does not render it invalid.

4. A municipal charter provided that taxes assessed on lands within the city should remain a lien thereon for two years from a designated day, "notwithstanding any devise, descent, alienation, mortgage or other encumbrance, and notwithstanding any mistake or omission as to the owner's name."—*Held,* that the limitation of the lien included the *owner* of the premises as well as his alienee &c., and that it could not be extended by the inaction of the municipal authorities in enforcing the lien within the prescribed time.

---

Bill to quiet title.    On general demurrer.

*Mr. W. P. Voorhees* and *Mr. G. C. Ludlow,* for demurrant.

*Mr. Henry Young,* for complainant.

THE CHANCELLOR.

This suit is brought to quiet the title to land in the city of New Brunswick, owned by the complainant, and of which he has

Kirkpatrick v. New Brunswick.

been the sole owner since March, 1871.   The encumbrances which he seeks to remove are a declaration of sale for unpaid taxes of 1877, and two certificates of sale for unpaid taxes of 1879 and 1881.   According to the statements of the bill, the declaration of sale and the certificate of sale for the taxes of 1881 are held by the defendant, the Taxpayers Protective Association of New Brunswick, and the other certificate of sale by the city. The complainant's land was taxed with other land not owned by him, and his land and that land were sold together for the tax. The sales were made under the charter of the city.   The sale for the tax of 1877 was made December 19th, 1881, and the sale for the tax of 1881, December 19th, 1883.   The bill avers that those sales were all made after the expiration of the lien given by the charter for those taxes, and therefore were *ultra vires*, and consequently were and are mere nullities.   The demurrer is filed by the association, which, it is said by its counsel, holds both certificates of sale, although, according to the statements of the bill, one of them, as before mentioned, is held by the city.   No objection is made on the ground of multifariousness.   The association insists that, upon the statements of the bill, the tax titles are valid, and the question of the validity of those titles was the only matter discussed or suggested upon the argument of the demurrer.

The complainant insists that the lien for the taxes expired in two years from the first Tuesday of September in the year in which the taxes were respectively levied.

By the charter of the city, approved March 18th, 1863 (*P. L. of 1863 p. 371*), entitled "An act to revise and amend the charter of the city of New Brunswick," it was provided (paragraph 62) as follows:

" That any assessment of taxes hereafter made in the city of New Brunswick, against any person or persons, shall be and remain a lien on all the lands and real estate of such person or persons within the said city, for the amount of such assessment, with interest thereon at the rate of twelve per cent. per annum, and all costs and fees, for the space of two years from the twentieth day of December of the year in which said assessment shall be made; and any assessment of taxes hereafter made upon any lands and real estate within the said city, shall be and remain a lien upon such lands and real estate, with

interest ·thereon, and all costs and fees, for the space of two years from the twentieth day of December of the year in which such assessment shall be made, notwithstanding any devise, descent, alienation, mortgage or other encumbrance thereof, and notwithstanding any mistake in the name or names of the owner or owners, or omission to name the owner or owners of such lands and real estate; and any assessment of taxes in which such mistake or omission occurs shall be valid and effectual in law, and, if unpaid, shall be returned in the list of delinquent taxes, and such lands and real estate may be proceeded against and sold in the manner provided by this act."

By a supplement to the general tax law, which supplement was approved March 25th, 1875 (*P. L. of 1875 p. 384*), it was, among other things, provided (paragraph 3) that all taxes thereafter assessed in the city of New Brunswick should become due and payable on the first Tuesday in September of each and every year. By another act, approved April 9th, 1875 (*P. L. of 1875 p. 634*), and entitled an act to amend that supplement, it was provided that the third section (just quoted) of the supplement should be amended so as to read as follows:

"That all taxes hereafter assessed in the said city of New Brunswick shall become due and payable on the first Tuesday in September in each and every year, and shall be and remain liens, with interest thereon at the rate of fifteen per centum per annum, and all legal costs and fees for two years thereafter upon the lands and in the manner provided in the sixty-second section of an act to revise and amend the charter of the city of New Brunswick, approved March thirteenth, eighteen hundred and sixty-three, and said liens may be enforced and said moneys collected in the manner in said act and supplements thereto provided."

And it was thereby also enacted that the fourth section of the supplement be changed and amended so as to read as follows:

"That whenever, in said act to revise and amend the charter of the city of New Brunswick, the words 'twentieth day of December' occur, the said words be and are hereby changed, and the said act amended to read, 'the first Tuesday in September;' and whenever, in said act, the words 'first day of March' occur, the said words be and hereby are changed, and the said act amended to read, 'the fifteenth day of December.'"

By the next section it was provided that all acts and parts of acts inconsistent with the provisions of the supplement at the

Kirkpatrick v. New Brunswick.

time of the approval thereof, be and they were thereby repealed, and that the supplement should be deemed a public act. It was also, by the next following section, provided that all acts and parts of acts inconsistent with the provisions of that act (of April 9th) be and the same were thereby repealed.

The bill is brought to a test by a general demurrer, filed, as before mentioned, by the association. It will have been seen that the charter provides that the taxes assessed upon land shall be a lien upon the land for the space of two years from the 20th day of December in the year in which the assessment shall be made. By the act of April 9th, 1875, the charter was so amended as to provide that the taxes shall be payable on the first Tuesday in September in the year in which they are assessed, and shall be and remain a lien thereon for two years from that time. It is urged, on behalf of the demurrant, that that act is not a valid amendment to the charter, and that if it were, the lien did not, as between the owner of the property and the city, expire with the two years, but continued as between them until payment of the tax. Or, in other words, if the tax was not paid within the two years, the lien still continued after that time, until payment of the tax, except as against a *bona fide* purchaser for value or a *bona fide* encumbrancer, as to whom it would expire with the period limited.

The ground for the first proposition, viz., that the act is not a valid amendment, is the claim that the act was in contravention of that clause of the constitution of this state which provides that to avoid improper influences which may result from intermixing, in one and the same act, such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title. *Const. art. IV.* ¶ *7* § *4.* And it is also argued that the act, if valid when passed, was repealed by the operation of the amendment to the constitution which provides that property shall be assessed for taxes under general laws and by uniform rules, according to its true value. *Const. art. IV.* ¶ *7* § *12.*

The act of March 25th, 1875, is entitled "A further supplement to an act entitled 'An act concerning taxes,' approved April

Kirkpatrick *v.* New Brunswick.

fourteenth, one thousand eight hundred and forty-six." It provides (section 1) that the assessors of the several townships, towns, wards, boroughs and cities in Middlesex county shall thereafter, in every year, make and finish these assessments between certain dates fixed in that act; (section 2) that the commissioners of appeal in cases of taxation of the city of New Brunswick shall meet on the third Tuesday in July, in every year thereafter, to perform their duties; (section 3) that all taxes thereafter assessed in that city shall become due and payable on the first Tuesday in September in each year; (section 4) that persons paying taxes in that city before certain dates—all prior to the first Tuesday of September—shall be entitled to certain deductions; (section 5) that where such taxes are not paid on or before the first Tuesday in September, but are paid on or before the 1st day of October, two per centum shall be added; if not paid until on or before the 1st day of November, three per centum shall be added; and if not paid until after that date, twelve per centum per annum, in addition to the three per centum, shall be added; and (section 6) that public notice of the act shall be given, and that the amounts of reductions and remissions made by the commissioners of appeal on taxes paid before the hearing and determination of the appeal, shall be returned to the persons entitled to receive them. The act of April 9th, 1875, is entitled "An act to amend an act approved March twenty-fifth, eighteen hundred and seventy-five, and entitled 'A further supplement to an act entitled "An act concerning taxes,"' approved April fourteenth, one thousand eight hundred and forty-six." It amends (section 1) the third section of the act of March 25th, 1875, so that it shall read as follows:

"That all taxes hereafter assessed in the said city of New Brunswick shall become due and payable on the first Tuesday in September in each and every year, and shall be and remain liens, with interest thereon at the rate of fifteen per centum per annum, and all legal costs and fees, for two years thereafter, upon the lands, and in the manner provided in the sixty-second section of 'An act to revise and amend the charter of the city of New Brunswick,' approved March thirteenth, eighteen hundred and sixty-three; and that said liens may be enforced and said moneys collected in the manner in said act and supplements thereto provided."

---

Kirkpatrick v. New Brunswick.

---

It also provides (section 2) that the fourth section of the act of March 25th, 1875, be amended so as to read as follows :

"That whenever, in said 'Act to revise and amend the charter of the city of New Brunswick,' the words 'twentieth day of December' occur, the said words be and they are hereby changed, and the said act amended to read, the 'first Tuesday in September;' and whenever, in said act, the words 'the first day of March' occur, the said words be and they are hereby changed, and the said act amended to read, 'the fifteenth day of December.'"

By its third section, it repeals all acts and parts of acts inconsistent with the provisions of the act amended, at the time of the approval thereof, and made the act amended a public one ; and it also repealed all acts and parts of acts inconsistent with its own provisions.   The act of March 25th has reference only to the time of making and finishing the assessment of taxes of the townships, towns, wards, boroughs and cities of Middlesex county and to taxes in New Brunswick.   The other act is an amendment of it.   The act of March has reference to taxes, and only to taxes.   It is local and special, but the amendments to the constitution, one of which forbids that any general law embrace any provision of a private, special or local character, had not been adopted when the acts under consideration took effect.   They both went into operation immediately.   The amendments to the constitution were not adopted until the 28th of September following.   The act of April has reference to taxes only in New Brunswick.   The sole subject of the act of March was taxation in Middlesex county.   There was no intermixing, in either act, of things that have no proper relation to each other.   The law embraced but one object—taxation—and that was expressed in its title.   The unity of the object is to be sought in the end which the legislative act purposes to accomplish, and not in the details provided to reach that end, and the degree of particularity to be used in the title of the act rests in the discretion of the legislature.   *Walter* v. *Union, 4 Vr. 350.*

Nor are these acts in contravention of the constitutional provision that property shall be assessed for taxes under general laws and by uniform rules, according to its true value.   In

*Trustees* v. *Trenton, 3 Stew. Eq. 667,* it was held that that provision relates only to the assessment of taxes, and, in that respect, concerns only such equalization of the burdens of taxation as will result from the designation of the property which shall be the subject of taxation, and the apportionment of the taxes thereon under general laws, by uniform rules and upon true valuations, and that the mere machinery by which taxes shall be assessed and collected is left to legislative discretion. There is no weight in the objection that, under the provisions of the acts in question, taxes in New Brunswick are made payable earlier than they are under the general tax law. Nor in any of the above objections based upon criticisms of the methods of asssessing and collecting taxes under those acts, or the working of the machinery for those purposes provided by those acts. It may be added that the act of April expressly and explicitly declares that the lien of taxes shall exist for two years from the first Tuesday in September of the year in which the tax is assessed, and even though the methods of assessing and collecting were subject to objection, the statutory provision in the act as to the duration of the lien would still be an effectual alteration of the provision in the charter on that head.

To consider, now, the proposition as to the duration of the lien: The lien is wholly a creation of the legislature. It exists only by virtue of the enactment. If the legislature, in creating it, has given it a merely limited existence, it will not continue beyond the period fixed. If the lien has expired by limitation, the municipal authorities cannot revive it. Nor can it be revived without consent, except by legislative enactment. The municipal authorities cannot extend it merely by their delay in enforcing it. The contrary doctrine is laid down in some of the text-books on the subject of taxation, but the only cases adduced in support of it are those of *Holden* v. *Eaton, 7 Pick. 15,* and *Swan* v. *Knoxville, 11 Humph. 130.* In the former case it was held that a sale of land for tax under a law of congress giving a lien upon the land for tax for two years, was valid, although made after the expiration of that period, provided the owner had not aliened nor encumbered the land. The ground of the

Kirkpatrick *v.* New Brunswick.

decision was that the act provided for enforcing payment of the tax by distress upon personal property or by sale of land; that no limitation of time was declared for making the distress, and that there seemed, to the court, to be no good reason why the collector should not sell real estate, after the expiration of the two years, as well as personal; that the design of the limitation was to prevent the alienation of real estate from being encumbered for an unreasonable period. In *Swan* v. *Knoxville*, the court said that it would be a violation of principle to hold that a public right shall be lost by the mere delay or neglect of the public agent to enforce it, and that, too, in the absence of any law expressly limiting the time in which it may be done. The question in that case arose under a law which gave a lien without any limitation. In *Holden* v. *Eaton*, it will be seen that the court would give effect to the limitation as against a grantee or an encumbrancer, and protect such persons against it after the expiration of the period fixed by the act. And yet it is quite obvious that if the limitation was of no effect against the owner, it was equally ineffectual as against his subsequent grantee or mortgagee. So that the extension of the lien as against the owner was merely the result of judicial construction. If congress designed, by the limitation, to declare that the lien should not exist beyond two years, as the decision under consideration admits it did, then, inasmuch as the limitation is unqualified, the lapse of the period must be equally destructive of it as against the owner as it is against his subsequent grantee or mortgagee; for the act makes no discrimination. In *Swan* v. *Knoxville*, the court does not say that the lien would continue after the limitation had expired, but the doctrine enunciated is based upon the assumption that the legislature had declared no limitation. The principle laid down in these cases wholly ignores all limitation to the existence of the lien, except actual payment of the tax. And it is obviously equally applicable to the lien given upon property which is encumbered, as it is to that which is unencumbered, and it is as applicable as against prior encumbrancers as it is against owners; for if the delay in enforcing the lien is to extend the lien, then it will do so as against all per-

sons interested in the property. The lien, under the New Brunswick charter, is paramount to all encumbrances existing at the time of making the assessment. *Trustees* v. *Trenton, 3 Stew. Eq. 667; Paterson* v. *O'Neill, 5 Stew. Eq. 386.* If the limitation declared in the charter is of no effect so far as the owner is concerned, it is of none so far as the prior encumbrancers are concerned. The doctrine under consideration obviously annuls the limitation altogether, and, if it be admitted, no reason appears for putting the limitation in the charter. It serves no purpose whatever. In this connection it is important to note the language of the charter. It is not that the lien shall exist for two years, except as against devisees, heirs, purchasers and encumbrancers, but that it shall exist for that period, notwithstanding any devise, descent, alienation, mortgage or other encumbrance. Now it is very clear that if the delay of the municipal authorities beyond the limited period to enforce the lien has the effect of extending the lien on the principle that the public should not suffer by the delay or neglect of its agents, the doctrine is just as applicable against prior encumbrancers as against the owner. There is no room for any discrimination. The words "notwithstanding any devise, descent, alienation, mortgage or other encumbrance," were used merely to declare the paramount nature of the lien for the designated period. The lien is to exist for two years, notwithstanding &c. And it will be observed that devise and descent are mentioned as well as conveyances and encumbrances; the legislature thus signifying that the lien is to be good for the two years, notwithstanding the devise or descent of the land, that is, that succession arising from the death of the owner should not affect it. It is quite clear that the legislature, by the language employed, intended merely to give a lien for two years, and no longer. Nor is any argument in favor of the construction contended for by the defendant's counsel in this case, to be drawn from our statute providing for the sale of the land of a decedent to pay his debts; for that statute, by its provisions, clearly contemplates a sale of the land after the expiration of the year mentioned in it. It provides that if the order for sale be made after the expiration of a year from the death of the dece-

dent, sale under it shall pass the title that the heirs or devisees had in the property at the time of making the order.

It is, however, enough to say that the lien for the tax exists only by virtue of the legislative enactment, and its existence is limited by the terms of the provision by which it is created. To extend it further would be judicial legislation. The legislature has not given an unlimited lien, saving the right of certain persons after the period of two years, but it has given a lien for two years, and only for that period, and has provided that it shall be paramount not only to all encumbrances &c. created during that period, but to all previously existing ones. *Trustees* v. *Trenton; Paterson* v. *O'Neill, ubi supra.* If, I repeat, it is valid against the owner after the expiration of the two years, it must, by the same reasoning, be equally good as against such encumbrancers until the tax be in fact paid, although it be after that period of time, for it is to be observed that the provision is not that the tax shall be a lien for two years only, against devisees, heirs, purchasers and encumbrancers, but that it shall exist for two years, notwithstanding the claims of such persons. The intention was to create a lien for two years only, and the provision against devisees, heirs, purchasers and encumbrancers was intended to make it a paramount lien, and subordinate the right and claims of such persons to it during that period, with all the consequences of the enforcement of it. The tax is not upon the owner, but upon the land, and, under the provisions of the charter, it is not necessary to give the name of the owner correctly nor at all. The charter declares that the tax upon the land shall be and remain a lien thereon for two years, notwithstanding any mistake in the name or names of the owner or owners. From this, too, it will be seen that if the lien be extended by construction against the owner, it must be so equally against the encumbrancer. It cannot be extended against either. It is a paramount statutory lien given upon land for tax levied upon the land. Existing only by virtue of the statute which limits its duration, its existence cannot, without consent, be extended, except by the legislature, beyond the period fixed. As the municipal authorities could not create it

by legislation of their own, it follows, necessarily, that they cannot extend it by their inaction in enforcing it. If they take no steps to enforce it within the time limited for its existence by the statute which created it, it is lost, and cannot be revived without consent, except by the same power which created it. This view of the subject was taken by the supreme court in *State* v. *Van Horn, 16 Vr. 136,* and by this court in *Field* v. *West Orange, 10 Stew. Eq. 434.* Statutes derogatory to the rights of property, or that take away the estate of a citizen, are to be construed strictly. It is urged that the fact that the legislature, in the sixty-eighth section of the charter, in making provision for the collection of taxes upon land, directs that the city treasurer prepare a transcript of the unpaid taxes, so far as the same " have been assessed upon any lands and real estate within the city, or are a lien upon any such lands and real estate ;" and in the seventieth and seventy-first sections, directs that if the taxes remain unpaid after notice, the treasurer shall proceed to sell the lands and real estate whereon said taxes " were imposed or may be a lien," is evidence that there was no intention to limit the duration of the lien, or, if there was, that the legislature intended that the land should be liable to sale to pay the tax after the expiration of the lien.

But in *Trustees* v. *Trenton, 3 Stew. Eq. 667,* it was, as before stated, held that the tax was a paramount lien to prior encumbrances &c., and that if the land be sold for the tax within the period fixed for the continuance of the lien, the purchaser will take it free from such encumbrances &c. If it be held that the legislature intended that the land should be liable to sale after the expiration of the time limited for the lien, it must also be held that sale after that period will, equally with sale before the expiration of that time, convey a title free from all encumbrances &c. existing prior to the assessment of the tax. Such was not the intention of the legislature. In *State* v. *Van Horn,* which was decided in 1883, the tax was assessed in 1879 against the land of Agnes Berry, who then owned the property. She sold the property in 1880. The tax-warrant was issued in 1881. That case was followed by *State* v. *Gugel,* decided on similar

facts in 1884, by the same court, on the authority of the former case. In those cases the tax was assessed against the owner, but he parted with his title before the tax-warrant was issued, and the warrant was not issued within the two years. The case of *State* v. *Van Horn* holds that the sale, in order to prolong the lien, must be made before the period fixed in the statute for the duration of the lien, expires. The court says that if a sale may be made after the limit fixed for the lien which, will pass a complete title against every person and estate, the limit of the lien is without meaning and absurd. It also says that the effect given by the act to the deed received by the purchaser renders it manifest that the lien must be continued by a sale before the two years have elapsed; for the act under which the proceedings in that case were taken declares that the deed shall vest in the purchaser a title good against the owner and every person claiming under him, and against any estate in the lands, legal or equitable, and against any "mortgages, alienations, devises, descents, liens and encumbrances of every kind and nature." In that case the person who brought the *certiorari* claimed under the person who owned the property when the tax was assessed, by a conveyance made after that time and before the expiration of the two years limited for the existence of the lien. He therefore was chargeable with full notice of the lien, and must have purchased subject to it. The court did not in anywise base its decision in the case on the fact that the property had been transferred after the assessment was made. It makes no distinction between that case and such a case as this, where the person who owned the property when the assessment was made continued to own it. The charter of New Brunswick provides that the purchaser or purchasers at the sale, and his and their legal representatives, shall, by virtue of the declaration of sale, lawfully hold and enjoy the lands and real estate, with the rents, issues and profits thereof, for his and their own proper use, against the owner or owners thereof, and all persons claiming under him or them, until the time for which the property shall have been sold shall be completed and ended. The purchaser then is to hold the property against the owner and all persons claiming under him.

It is noticeable that no discrimination is made in favor of encumbrancers holding under the owner by encumbrance existing before the making of the assessment, but the declaration of sale is to pass title as against the owner and all claiming under him, whether upon encumbrances created before or after the assessing of the tax. The language of the charter of Trenton passed upon in *Trustees* v. *Trenton, 3 Stew. Eq. 667*, on this head, is the same as that of the charter of New Brunswick. It is impossible to avoid the conclusion that if the lien is to be extended by construction beyond the time fixed in the charter, such extension must necessarily embrace in its effects and operation the interests of prior as well as subsequent encumbrancers. By such construction the limitation is disregarded and made of no effect whatever. The decision of the supreme court in *State* v. *Van Horn*, governs this case. In view of the provision above alluded to as to the title which a purchaser acquires under the declaration of sale, it is impossible to hold that the legislature intended that in case the land was sold after the expiration of the two years, the sale should be good only as against the owner and those claiming under him by conveyance or encumbrance made or created after the assessment of the tax; for the provision, as before stated, extends to all conveyances and encumbrances, made by the owner, existing at the time of the sale. Subsequent grantees, and subsequent as well as prior encumbrancers have a right to conclude that the lien will not exist after the expiration of the time limited for its continuance by the act.

The demurrer will be overruled.