Complainants' bill seeks a decree quieting title to certain of their lands and premises whereon they allege the defendant municipality improperly claims and asserts a lien for water by it furnished and used upon the said premises.
Although here challenged, the jurisdiction of this court to entertain an action of this nature is, in view of Stevens v.Ryerson, 6 N.J. Eq. 477; Kirkpatrick v. Mayor and CommonCouncil of New Brunswick, 40 N.J. Eq. 46; affirmed, 41 N.J. Eq. 347; In re Devine, 62 N.J. Eq. 703; Dodge et al. v. Jordan etal., 91 N.J. Eq. 42; Nugent v. Hayes et al., 94 N.J. Eq. 305,
no longer open to question.
The cardinal facts underlying the relief which complainants here seek may be summarized thus: Prior to July 11th, 1932, one Michael Covello was the owner — subject to a mortgage held by complainant Frank Diorio — of the lands and premises in question situated in the defendant municipality and more particularly known as lots numbers 18 to 20 and 51 to 53, both inclusive, in block 7 and numbers 21 to 38, *Page 558 
both inclusive, in block 8, as same are shown on the map of Henderson Land Improvement Company, Henderson Terrace, Ferndale, New Jersey. The said mortgagee, by reason of default thereunder, foreclosed his said mortgage with the result that the premises were, on July 11th, 1932, conveyed to the present complainants by the sheriff of Bergen county by deed recorded in the office of the clerk of Bergen county on September 8th, 1932. Subsequently, complainants for a stated monthly rental let said lands and premises to the said Michael Covello, which prior to said letting were always furnished and supplied with water from an artesian well located thereon and never by the defendant municipality. After said letting, Michael Covello, in his own name and without complainants' permission, knowledge or consent, applied to the defendant municipality for the installation of all the necessary mains, piping, meters and appliances to enable it to supply him with water for use in and upon the property in question, which it thereupon did. After the installation of its water service, the cost of which was charged to and paid for by said Michael Covello, defendant continued to furnish and supply said applicant with water in said premises, all bills for which it charged and sent to him, and the payment of all of which, excepting those whereon its present water lien is founded, was made by him. All of these things were done without complainants' permission or consent and were entirely unbeknown to them, until around March of 1934, when one of them perchance learned from defendant's tax collector of the existence of the water lien here asserted, whereupon they filed their present bill.
Notwithstanding the foregoing facts, none of which are disputed, defendant opposes the relief here sought by complainants upon the sole ground that it, having furnished water which was used in the premises owned but not occupied by complainants, is entitled to a water lien thereon for delinquent water charges by virtue of sections 11 and 12 of article XXXII, chapter 152, P.L. 1917 (Cum. Supp. Comp. Stat. 1911-1924 p.2300 § 136-3212, 3213); and this despite the fact that the installation of the water service and the subsequent supply of water were, as above indicated, without complainants' *Page 559 
permission, knowledge or consent. These sections provided:
Sec. 11. The owner of any house, tenement, building or lot shall each be liable for the payment of the price or rent fixed by the said governing body for the use of water by such owner or by the occupier, and for the installation, purchase price, repair and testing of any water meter or water meters, water service, water services, connections, appliances or parts, and renewals thereof, heretofore or hereafter furnished or made by such municipality, or any department thereof, in or upon such house, tenement, building or lot, or connecting with such house, tenement, building or lot, and the interest and penalties charged; and such price or rent so fixed, and the other costs, expenses, interest and penalties aforesaid, shall be a lien upon said house, tenement, building or lot, until the same shall be paid and satisfied. Said governing body shall have authority to require payment in advance for the use or rent of water furnished by said municipality, and for any work to be done or materials to be furnished.
Sec. 12. In case prompt payment of any water rent or rents, or for work done or materials furnished, is not made when the same shall become due, the water may be shut off from such houses, tenements, buildings or lots, and shall not be again supplied thereto until such arrears with interest and penalties shall be fully paid. If any water rent or rents or other charges shall remain unpaid and in arrears for six months, the officer or board charged with the duty of collection thereof shall file with the officer charged with the duty of the collection of tax arrears a statement showing such arrearages, and from the time of such filing the said water rent or rents or other charges shall be a lien upon the land and buildings to which said water was furnished, and in connection with which such charges were incurred to the same extent as taxes are a lien upon lands in said municipality, and shall be collected and enforced by the same officers and in the same manner as liens for taxes are enforced and collected.
It might not be amiss to presently point out that it is merely the defendant's right to its asserted water lien, and not its rights as against the owner or occupant or with respect to shutting off and refusing to restore its water service until the delinquent charges are first paid, which is here involved or in anywise intended to be passed upon. Hence, Vreeland v. JerseyCity, 37 N.J. Eq. 574; McDowell v. Avon-by-the-Sea Land andImprovement Co., 71 N.J. Eq. 109; Munson Dye Works v. Mayor andAldermen of Jersey City, 116 N.J. Eq. 245; reversed, 116 N.J. Eq. 568
— dealing with the right of a privately or publicly owned and operated *Page 560 
water corporation to shut off and withhold its water service until delinquent charges are first paid — cited and relied upon by defendant neither bear upon nor are applicable to the issue presented by the case at bar.
The sections, thus relied upon by defendant, are hereinabove set forth in extenso so that the character of the lien accorded thereby, as well as the circumstances of its creation, may thus be fully displayed. From a reading of these enactments, it is apparent that this lien, although collectible and enforceable by the same officers and in the same manner as liens for unpaid taxes, is nevertheless fundamentally different both in its nature and origin from that given to the defendant for taxes assessed and levied pursuant to the provisions of "An act for the assessment and collection of taxes" (Revision of 1918). P.L.1918 p. 847; Cum. Supp. Comp. Stat. 1911-1924 pp. 3483 to 3507.
In contradistinction to the asserted water lien, taxes and their resultant lien upon property, although constituting a liability or obligation, are in their essential characteristics neither debts nor contractual obligations, but on the contrary are, in legal contemplation, exactions or impositions made ininvitum, upon person or property, pursuant to and by virtue of legislative authority, in order to raise funds for governmental or other sanctioned public purposes. City of Camden v. Allen,26 N.J. Law 398; Board of Freeholders of Atlantic County v.Weymouth, 68 N.J. Law 652; Paterson Avenue, c., RoadCommissioner v. Freeholders of Hudson, 44 N.J. Law 570; Bakeret al. v. City of East Orange, 95 N.J. Law 365; affirmed,96 N.J. Law 267.
But not so with respect to the nature and characteristics of the municipality's water lien. Its origin is to be found not in any taxing power, but in an underlying express or implied contractual relationship between the municipality and the property owner for the sale and purchase of its water service. Without such an initial relationship, the water rent or charge, the arrearage of which is made an indispenable statutory prerequisite to the creation of the water lien itself, cannot come into legal existence. Were it otherwise, then it would be tantamount to placing it within the power of a *Page 561 
total stranger or even a mere trespasser or squatter upon one's property to subject it to a water lien by his merely having the municipality install its water service therein and supply water thereto, even though such may have been without the owner's permission, knowledge or consent. The utter untenability of any such theory is manifested by its very assertion.
I am aware of no rule of law, statutory or otherwise, and counsel's assiduity has failed to disclose any, making it incumbent upon the owner or occupant of real property to purchase water for use therein from such private or municipal corporation as may then own and operate the water supply for the particular locality wherein his property happens to be situated. Obviously, any such law, if existent, would present the gravest of doubts as to its constitutionality. Nor has counsel been able to refer me to any law whereby the owner of property, such as here involved, is prohibited from supplying water for use therein from sources other than that of the municipally owned and operated water supply or is even required to furnish any water at all for his said property.
Consequently, a corporation, municipal or otherwise, owning and operating a water supply cannot, without the express or implied authority or consent of the owner or his duly authorized agent install a water service to his property, furnish water for use therein and thus acquire a right to a lien thereon for arrearages in payment of its charges therefor. To hold otherwise would be equivalent to sanctioning the taking of one's property without due process and without just compensation in direct contravention and violation of both our state and federal constitutional guaranties to the contrary.
The obvious design of sections 11 and 12, supra, is to provide an instrumentality, not much unlike in practical effect to that afforded to mechanics and materialmen under the Mechanics' Lien law, Revision of 1898 (3 Comp. Stat. pp. 3290 to3315), whereby the municipality may to a certain extent secure itself against the non-payment of the rents and charges therein specified. These sections, as those in the Mechanics' Lien law, necessarily presuppose the owner's *Page 562 
express or implied authorization or consent to the incurring of those charges on his behalf in all instances wherein his property is sought to be subjected to the lien therein specified. To not so hold would necessitate the placing of a construction upon these sections which would render them unconstitutional by bringing them within the state and federal constitutional inhibitions against the taking of private property without due process and without just compensation; thereby, of necessity, resulting in their defeat and that of their clearly evinced legislative intent; in contravention of the well settled rule that a statute ought upon the whole to be so construed that, if it can be prevented, it or no part thereof shall be defeated or rendered meaningless or void. Den ex dem, James v. Dubois,16 N.J. Law 285; State, Danforth v. Paterson, 34 N.J. Law 163;Smith's Executors v. Tucker, 17 N.J. Law 82; Steel v.Freeholders of Passaic County, 89 N.J. Law 609; General Inv.Co. v. American Hide and Leather Co., 97 N.J. Eq. 214.
It is entirely undisputed that up until the time of Michael Covello's application, the premises in question had never been supplied with water from any source other than the artesian well located thereon. No complaint ever appears to have been found or made with respect to the suitability or adequacy of that source of water supply. Notwithstanding this, and without securing complainants' consent or permission or even apprising them thereof, Michael Covello, as hereinbefore stated, applied to and had defendant install its water service in and supply water to said premises, in addition to or instead of that theretofore supplied exclusively by and from the said artesian well. Notwithstanding this, defendant has neither shown nor claimed that the water service installation was made or that the water — by reason of the non-payment for which it here seeks to impress a water lien upon complainants' property — was supplied upon complainants' request or with their knowledge or consent, or that of their authorized agent. In view of these admitted facts, its asserted lien cannot be sustained.
Decree accordingly. *Page 563