LEHIGH VALLEY RAILROAD COMPANY, PROSECUTOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY ET AL., RESPONDENTS.

Argued May 5, 1927—Decided August 15, 1927.

1. A charge for water furnished by a municipality to an owner or occupant of lands is not a tax, but is the subject of a contract, the sale of a commodity, creating the relationship of seller and purchaser as between the municipality and the consumer.
2. The amount of the charge must be reached with that certainty that would warrant a recovery in an action for goods sold and delivered.
3. *Held*, that the arrears of water rents sought to be made by a sale of prosecutor's lands were arrived at by methods and calculations making the result arbitrary, inaccurate, uncertain and speculative, and, in consequence, such charges and the proceedings for collection by sale of lands must be set aside.

On *certiorari*.

Before Justices PARKER and CAMPBELL.

For the prosecutor, *John Milton.*

For the respondents, *Thomas J. Brogan* and *Stephen M. Egan, Jr.*

The opinion of the court was delivered by

CAMPBELL, J.   The writ of *certiorari* brings before us for review proceedings upon the part of the city of Jersey City to sell lands of the prosecutor for alleged arrears of water rents and to review the alleged charges as shown by the records of the water department of the city, the statement thereof certified by the city collector and the advertisement of sale.

The collector's return to the writ contains a copy of the statement of the water department certifying arrears of water rents amounting to $50,930.93 of principal and $14,000 interest, a total of $64,935.93. The amount advertised by the collector is $82,297.10, which includes an item for unpaid

taxes and interest which is pending in the courts on appeal from a tax assessment. No point is made, however, of the inclusion of such taxes in the proceeding to sell.

Accepting the concession in respondents' brief that "the facts that are material to the issue * * * are set out in the brief for prosecutor, and, as they appear therein, are substantially correct," we quote such facts as follows:

"On May 23d, 1908, the city and prosecutor entered into a contract for a supply [of water] by the city to the Johnston avenue terminal yard of prosecutor, in Jersey City. Pursuant thereto prosecutor installed a meter, the registration of which. under the contract, should 'form the basis upon which bills shall be rendered to, and payment made by,' the prosecutor, at a specified rate. On the morning of September 14th, 1922. the city began a test of this meter which lasted forty-eight [48] hours, ending on the morning of September 16th. This test indicated that the meter, during that forty-eight-hour period, registered but fifty-three per cent. of the water passing through it. Thereupon, upon the assumption that this defect had been constant during the prior period [back to May, 1918] the director of streets and public improvements entered charges on the books of the city representing the difference between one hundred per cent. and fifty-three per cent., covering a period from May 23d, 1918. to August 23d, 1922 [four years and three months], and rendered a bill amounting to $50,930.93 of principal. Prosecutor refused to pay this bill, although it did pay a bill which included the deficiency during the test period. On this refusal the director of streets and public improvements certified the $50,930.93 plus interest to the city collector, as an arrearage of water rents, and the latter advertised the premises for sale. Upon publication of the notice of intention of the city to sell the property of the railroad company for such alleged arrearages of water rents, the company applied to the Court of Chancery for an injunction to restrain the sale upon the ground that the moneys claimed were not due and that the proceedings were otherwise irregular. The court denied a preliminary injunction because it conceived that there existed an adequate remedy at law by *certiorari*. Such refusal of relief was neces-

sarily followed by an immediate application to this court for a writ of *certiorari* which was allowed by Mr. Justice Black. The return certifies the test, the application of the same percentage of inaccuracy to the preceding period, the entries on the city's books, rendition of bill and refusal to pay. * * * After the filing of the return and reasons, and the taking of depositions under the rule had begun, the city, by stipulation, enlarged its claim by including a still earlier period [December 16th, 1908, to May 28th, 1918], and increasing its demand $73,507.95 so that the record before the court discloses a claim made by the city amounting to $124,-438.88 of principal, covering a period of thirteen [13] years and eight [8] months, based on a test made in 1922 lasting but forty-eight [48] hours. This enlargement of the city's claim resulted from the discovery during the taking of depositions that the meter had been put in service in 1908 instead of 1918."

The reasons filed are sixteen in number and are argued under seven heads or points, as follows:

1. The theory on which the city bases its claim is unsound.

2. The so-called test is not conclusive.

    (*a*) The testing meters were unreliable.

    (*b*) The test was insufficient and incomplete.

3. The conclusions drawn from the test are fallacious.

4. The city is now estopped from asserting its claim.

5. The claims for interest are unjustified and erroneous.

6. The city is bound by contract to base charges on meter registration.

7. Prosecutor is not liable for charges incurred during the period of federal control.

We have not considered any of the grounds or reasons urged under points 4, 5, 6 and 7 because at the outset we have been confronted by the argument, which we consider substantial, that the charges for water, forming the basis of the proceeding before us, are too inaccurate, uncertain and speculative, to permit the enforcement of payment thereof.

Our conclusion is that a charge for water furnished by a municipality to an owner or occupant of lands is not a tax, but is the subject of a contract, the sale of a commodity,

creating the relationship of seller and purchaser as between the municipality and the consumer. *Jersey City* v. *Morris Canal and Banking Co.,* 41 *N. J. L.* 66; *Ford Motor Co.* v. *Kearny,* 91 *Id.* 671.

This seems to be universally conceded. 40 *Cyc.* 796, ¶ *E;* 19 *R. C. L.* 764, § 69; *Supp. No.* 4, p. 1288; 27 *R. C. L.* 1434, § 50; *Supp. No.* 3, p. 1554; *Supp. No.* 4, p. 1796; 43 *Corp. Jur.* 70, § 6, and p. 183, § 180.

All the cases cited under the foregoing hold that a municipality has two classes of powers:

1. Legislative and governmental by virtue of which it exercises a governmental and police power and controls its people: and

2. Proprietary and business by which it acts and contracts for the private advantage of itself and its inhabitants. In the exercise of the proprietary and business powers the municipality is governed by the same rules as control an individual or business corporation under like circumstances.

This principle was asserted and the rule applied in this state in *Karpinski* v. *South River,* 85 *N. J. L.* 208, and *Olesiewicz* v. *Camden,* 100 *Id.* 336, in holding the municipality liable for damages for negligence growing out of works and operations carried on under its business and proprietary powers.

The providing of water for extinguishing fires and electricity for lighting streets and public places are governmental functions, while the distribution of water and furnishing of electricity to its inhabitants, for a price, is the exercise of a private or proprietary function by the municipality, and is governed by the same rules as apply to private corporations.

Our consideration of the proofs before us does not satisfy us that the amount claimed by the city approaches the point of certainty that is necessary. There is much therein that is pursuasive in favor of finding that the meter installed in 1908 was out of repair, and was not accurately measuring and registering at the time of the tests made by the city. There is nothing, however, showing with any certainty when that condition of disrepair or inaccuracy arose. It would

therefore be highly arbitrary to assume that it had existed a month or a year prior to the test, and certainly much more unwarranted to carry it back to the date of installation in 1908, as the city has.

Disregarding the question of disrepair and assuming that the meter could not and never did register when the flow was small—under three hundred or four hundred gallons per minute—and assuming that the tests were accurately made and the testing apparatus was accurate, the result arrived at, by the method employed by the city, would still bear the stamp, not only of inaccuracy, but of conjecture and speculation.

By the method of computation employed, accuracy in result could be reached only provided that during all times in the period from 1908 the several flows through the meter had been in accurate accord with the flows as measured during the test period. This is not shown, and, of course, could not be because such a condition did not and could not exist.

The relationship between the city and prosecutor being one arising out of contract, could a recovery in an action at law based upon any such theory be maintained? The indisputable answer must be in the negative. *Dover* v. *Richardson and Boynton Co.,* 81 *N. J. L.* 278; *Bayonne* v. *Standard Oil Co., Ibid.* 717.

Our conclusion is that the amount of the charges against the prosecutor sought to be imposed upon and made out of its property by sale is arbitrary, inaccurate, uncertain and speculative, and cannot be maintained, and that there is no evidence before us of such character as will permit a fixing and determining of the amount, if any, due from the prosecutor.

The charges and water rents and all proceedings thereunder, brought up for review, are therefore set aside, with costs.