VINCENT J. MURPHY, DIRECTOR OF REVENUE AND FINANCE AND COLLECTOR OF TAXES OF THE CITY OF NEWARK, RELATOR, v. JOS. HOLLANDER, INC., A CORPORATION OF NEW JERSEY (DISSOLVED), AND JOSEPH HOLLANDER, KATHERINE H. COHEN AND LILLIAN H. STUBINS, TRUSTEES IN DISSOLUTION, ET AL., RESPONDENTS.

Submitted May 4, 1943—Decided December 16, 1943.

Before Justices PARKER, HEHER and PERSKIE.

For the relator, *Raymond Schroeder* (*Joseph A. Ward,* of counsel).

For the respondents Jos. Hollander, Inc., Katherine H. Cohen, Lillian H. Stubins and Bertha H. (Solomon) Steckler, *Milton M. Unger.*

For the respondents Rebecca Hollander and Bertha H. (Solomon) Steckler, executrices of Joseph Hollander, deceased, *Joseph A. Weisman.*

For the respondent A. Hollander & Son, Inc., *Rubach & Albach (Max M. Albach,* of counsel).

The opinion of the court was delivered by

HEHER, J.  The taxing district of the City of Newark levied taxes on the personal property of Jos. Hollander, Inc., a corporation now dissolved, for the years 1935, 1936 and 1937; and the question at issue is whether payment of the taxes may be enforced by *mandamus* against the trustees in dissolution of the assessed corporation, its directors and stockholders, and the purchasers of the property it possessed at the time of its dissolution.  The assessment for each of these years was in the sum of $100,000; and the taxes, interest and charges aggregated $15,454.52 on December 24th, 1942, when this proceeding was instituted.

On the owner's appeals, the assessments for the years 1935 and 1936 were sustained by the Essex County Board of Taxation and the State Board of Tax Appeals.  There was no appeal by Jos. Hollander, Inc., from the assessment made for 1937.  An assessment, presumably covering the same property, was laid upon Perfection Fur Dressing & Dyeing Co., Inc., for that year; and an appeal taken by that corporation was dismissed.  It claimed title to the dissolved corporation's property under a bill of sale made by the latter's directors and stockholders on January 2d, 1937.  Of this, more hereafter.  On August 4th, 1939, this court allowed a rule to show cause why a writ of *certiorari* should not issue to review the determinations of the State Board of Tax Appeals affirming the assessments for 1935 and 1936, and to review also the assessment for 1937; and on September 11th, 1941, the proceeding was discontinued by consent of the

prosecutor of the rule, Jos. Hollander, Inc., and the defendant therein, City of Newark.

The facts have been stipulated. On November 16th, 1936, the stockholders of Jos. Hollander, Inc., consented in writing to the dissolution of the corporation, but the certificate thereof was not filed with the Secretary of State until May 1st, 1939. "Following the dissolution on November 16th, 1936," the assets remaining after payment of its "debts" ("not including cash") were "distributed" among its stockholders "as a liquidating dividend." On December 26th, 1936, these distributees, as owners, entered into an agreement with A. Hollander & Son, Inc., to sell and convey to it all the machinery, equipment, goods and chattels and personal property theretofore belonging to the dissolved corporation for $27,500, and to lease to it for the term of nine years, at an annual rental of $15,000, the lands and factory premises used by that corporation in the conduct of its fur dressing and dyeing business, and also to grant to it the exclusive right of user of certain formulæ, recipes, processes and methods for dressing and dyeing furs and skins theretofore employed by the corporation in the pursuit of its business, for the like term of nine years, in consideration of the payment of an annual royalty of $7,500 for the first eight years and $7,000 for the last year. The vendors represented that they were the sole and absolute owners of the property constituting the subject-matter of the agreement, and that the property, tangible and intangible, was free and clear of all liens, charges and encumbrances, except a mortgage covering the realty to be leased. The vendee reserved the right to assign the agreement to a corporation to be formed. In the exercise of that right, the Perfection Fur Dressing & Dyeing Co., Inc., was organized as a body corporate on December 30th, 1936; and on the ensuing January 2d, the agreement was consummated by the making to the newly created corporation of a bill of sale for all the personal property, a lease for the realty, and a grant of the exclusive license to use the formulæ and processes, all upon the stipulated terms and conditions. This was a "wholly owned subsidiary" of A. Hollander & Son, Inc. It was dissolved by its stockholders on April 2d, 1938;

and A. Hollander & Son, Inc., succeeded to all its assets and assumed all its liabilities. Some of the machinery and equipment thus conveyed was sold and the remainder was junked as having "no practical value." None of it is now available for the liquidation of the unpaid taxes. The consideration price paid by the Perfection Company was used in its entirety to satisfy debts of Jos. Hollander, Inc.

There was no "distress or tax warrant" issued or "levy made" by the City of Newark "upon any property of Jos. Hollander, Inc., prior to its dissolution or thereafter at any time prior to the institution of this suit," to enforce payment of the taxes so assessed; and "no proceedings were taken" by the City "for the payment or satisfaction of any of said taxes prior" to the commencement of this action.

In order "to induce" the Perfection Company "to purchase" the property, and "in compliance with" *R. S.* 46:29–1, *et seq.*, the vendors made affidavit that they were "the sole owners and in actual possession of the property," and had "the absolute right and lawful authority to sell the same;" that they had "no creditors having claims against" the property; and that "each and every part" thereof "is now free and clear of and from all debts, claims, demands and liens of whatever nature and description, including judgments, liens, levies, mortgage or mortgages," except the mortgage covering the realty.

The relator maintains that *mandamus* may issue "to enforce payment of personal taxes levied against a corporation where an effective distress and levy cannot be made against personal property as provided by statute;" and that, in the circumstances, the writ should issue against the corporation, and its directors and stockholders as well, on the theory that the legal title to the corporate assets passed on dissolution to the directors in trust for the creditors and stockholders and the directors are "primarily" and the stockholders "secondarily liable" to the creditors "to the extent of the moneys received," and that, as respects the purchaser, the unpaid taxes "were a charge against the property."

There was no lien upon the delinquent's property for these tax arrears. *R. S.* 54:4–78 authorizes the collector to "enforce

the payment of all taxes on personal property * * * by distress and sale of any of the goods and chattels of the delinquent in the county;" and *section* 54:4–79 provides that. "If goods and chattels of the delinquent cannot be found, or not sufficient to make all the money required to pay the taxes on personal property," the collector "may * * * take the body of the delinquent" and, failing immediate payment of the tax and costs, deliver him to the sheriff or jailer of the county, "to be kept in close and safe custody until payment be made of the amount due on the taxes with costs, but there shall be no arrest or imprisonment for default in payment of taxes on real estate." *Section* 54:4–82 lays down the procedure for the discharge of the imprisoned delinquent. He may present to the Court of Common Pleas a verified petition setting forth that he is "without sufficient goods and chattels whereof to make a distress and without means of payment of the tax and costs;" and the court is empowered, after a hearing upon notice, to order the delinquent's "discharge" or "his release upon condition that he shall pay the tax and costs assessed against him in such manner as the circumstances of the case shall warrant." It is further provided that "A person released upon condition that he shall pay the tax and costs, who shall violate the condition of the order releasing him, may be taken into custody and kept in confinement until the tax and costs are paid."

The mere assessment of a personal property tax does not impose a lien for the amount thereof upon the goods and chattels of the person to whom the property is assessed, unless there is specific legislative provision therefor; and the taxes are ordinarily collectible solely in the manner provided by the statute. A lien arises only by virtue of a levy made under a distress warrant issued pursuant to *section* 54:4–78, *supra*. *R. C. Stanhope, Inc.,* v. *Township of North Bergen,* 129 *N. J. L.* 513. Thus, the ultimate purchaser of this delinquent's goods and chattels is not accountable for their value on the hypothesis of an enforceable lien thereon.

It remains to consider whether the trustees in dissolution and the directors and stockholders are accountable for the value of the corporate assets which came into their possession.

and, if so, whether they may be commanded by *mandamus* to render payment of the taxes' to the extent of the property thus received. Relator maintains that, since there is now no adequate remedy for the collection of the taxes, *mandamus* may be invoked to that end under the authority of *Person* v. *Warren Railroad Co.*, 32 *N. J. L.* 441, and *McLean* v. *Delaware, Lackawanna and Western Coal Co.*, 13 *N. J. Mis. R.* 83.

But these cases are not apposite. Here, the corporate delinquent has been dissolved, and its assets, so it is said, administered and the proceeds applied to the satisfaction of corporate debts. It may well be that the trustees and the stockholders are under a duty to account for the value of the corporation's property at the time of dissolution; indeed, that seems to be the theory upon which the relator proceeds. But while *mandamus* has from early times been deemed to be a peculiarly appropriate remedy in matters of public concern (the early cases laid it down that only a public right was thus enforceable), it is an extraordinary writ that is awarded only where the right sought to be enforced is legal and the right and the correlative duty are clear and certain. The nature of the remedy is such as to call for caution in awarding it. It never issues in doubtful circumstances. *Beronio* v. *Hoboken*, 130 *N. J. L.* 620; *Hugg* v. *Camden*, 39 *Id.* 620.

Whether there is property or its equivalent held in trust for the creditors of the dissolved corporation, and, if so, of what it consists and the value, and whether the City may demand an accounting and the application of the moneys found due thereon to the liquidation of the unpaid taxes are mixed questions of law and fact that are not determinable on *mandamus*. That proceeding is plainly not adapted to their final adjudication and the doing of complete justice. There is no disclosure of possession of corporate assets by the trustees, *qua* trustees; and the statute does not burden the stockholders, as distributees of the property, with personal liability for the taxes. Yet this does not necessarily mean that the municipality is remediless.

While such a tax is not a "debt" in the strictly technical

sense, and therefore an action in debt will not lie for its recovery, there are cases holding that a creditor's bill in equity for discovery and an accounting is maintainable by the taxing power in circumstances such as these. A tax is not, in legal contemplation, either a debt or a contractual obligation. *City of Camden* v. *Allen,* 26 *N. J. L.* 398; *Freeholders of Atlantic* v. *Weymouth,* 68 *Id.* 652. It operates *in invitum.* It is an impost levied by the sovereign authority to raise moneys for the support of the government, or for some special purpose within the domain of government. It is an exaction due to the government in its sovereign capacity, while debts are owing to the government in its corporate capacity. *Liberty Mutual Insurance Co.* v. *Johnson Shipyards Corp.,* 6 *Fed. Rep.* (2*d*) 752. But, for the purposes of enforcement, a tax assessment has been regarded as assimilating the qualities of a judgment so as to support a creditor's bill. As stated, it is an obligation created by the government: and it has "the efficacy of a judgment," and is "capable of being enforced by process more summary than legal execution." *City of Camden* v. *Allen, supra.* And the distress warrant is analogous to an execution.

Where the legislature has provided a special method for the collection of taxes, such is ordinarily an exclusive procedure, and remedies based upon general legal rules may not be invoked. The maxim *"expressio unius est exclusio alterius,"* governs in the absence of provision otherwise, express or fairly to be implied. *Freeholders of Atlantic* v. *Weymouth, supra; Baker* v. *East Orange,* 95 *N. J. L.* 365; *affirmed,* 96 *Id.* 267. Yet, where the statutory means of collection have been exhausted, resort to other measures to enforce payment of the tax, and thus to obviate a failure of justice, have been deemed legally justifiable; and the tax is considered a "debt" in the sense of an obligation or liability for which a creditor's bill will lie. A "creditor" is one who has the right to demand the fulfillment of an obligation. *Darnell* v. *State,* 174 *Ind.* 143; 90 *N. E. Rep.* 769; *State* v. *Georgia Co.,* 112 *N. C.* 34; 17 *S. E. Rep.* 10; *Albany County* v. *Durant,* 9 *Paige* 182; *reversed, sub nom. Durant* v. *The Supervisors of Albany Co.,* 26 *Wend.* 66;

*McInerny* v. *Reed,* 23 *Iowa* 410; *United States* v. *Pacific Railroad Co.,* 4 *Dillon* 66, *Fed. Cas. No.* 15,983. The Federal Supreme Court has in certain circumstances recognized a tax as a debt, while in other circumstances it has been denied that character. *Lane County* v. *Oregon,* 7 *Wall.* 71; *Dollar Savings Bank* v. *United States,* 19 *Wall.* 227. And a bill in equity is maintainable to enforce a trust for the payment of taxes. *Boston* v. *Turner,* 201 *Mass.* 190; 87 *N. E. Rep.* 634.

The ruling principle would seem to be that a creditor's bill lies for the discovery of property placed beyond the reach of legal process, in aid of the collection of the tax. The denial of an appropriate remedy in such circumstances would put a premium on tax evasion and fraud, and make for inequality in the apportionment of the tax burden. The statute ordains that all property shall be assessed "to the owner thereof" on the tax date, and renders the owner so assessed "personally liable" for the tax. *R. S.* 54:4–1; *chapter* 120, *Laws of* 1943. As we have seen, a lien for the tax does not attach to the goods and chattels by virtue of the assessment alone. The principle that other procedural means may be employed where the statutory process has been exhausted was given application in *Person* v. *Warren Railroad Co., supra,* and *McLean* v. *Delaware, Lackawanna and Western Coal Co., supra.* The remedy of *mandamus* is available only where in the special circumstances the statutory remedy is inadequate. It is the general rule that, in the absence of any other adequate remedy, *mandamus* may be invoked to enforce payment of taxes assessed against a body corporate; and that when a specific duty is laid by the law upon a private corporation, and no other adequate remedy is provided for its enforcement, the writ of *mandamus* may issue to compel performance. *High's Extraordinary Legal Remedies* (3d ed.), §§ 142, 277, 283. The statute provides for enforcement of the payment of such taxes by distress and sale of the goods and chattels, and, in the last resort, by imprisonment of the delinquent. If *mandamus* is available for the collection of the tax in the event of the failure of the statutory remedy, why not a creditor's bill where the

property subject to distress and sale has been disposed of under circumstances such as these. The coercive remedial measure of imprisonment, failing relief by distress and sale of the goods and chattels, is of no avail against delinquent bodies corporate. But there is no occasion to pursue the inquiry to a conclusion. It suffices now to hold that the writ of *mandamus* is not invocable by the municipality in the circumstances here presented.

Let the rule to show cause be discharged, without costs.