RAY E. NELSON TRANSPORTATION COMPANY, a Corporation, Plaintiff,

v.

TRI-STATE INSURANCE COMPANY, a Corporation, Defendant.

RAY E. NELSON TRANSPORTATION COMPANY, a Corporation, Plaintiff,

v.

AMERICAN UNION INSURANCE COMPANY, a Corporation, Defendant, United States of America, Intervenor.

Civ. Nos. 01259, 01260.

United States District Court
D. Nebraska.

April 27, 1964.

J. C. Tye, Kearney, Neb., and Richard J. Bruckner, Omaha, Neb., for plaintiff.

Thomas J. Walsh, Omaha, Neb., for defendant Insurance Companies.

Russell J. Blumenthal, Asst. U. S. Atty., Omaha, Neb., for intervenor.

ROBINSON, Chief Judge.

Both of these actions were originally instituted in this Court by the Plaintiff

---

to claim the right to payment of the proceeds of certain fire insurance policies because of the alleged loss by fire of certain goods which were supposedly insured by the Defendant Insurance Companies. In both of these actions, the issues were settled before trial, with judgment being entered in plaintiff's favor and against Tri-State Insurance Company in the amount of $24,000 in the one case and in plaintiff's favor and against American Union Insurance Company in the amount of $7,263.38 in the other case. The United States as intervenor, has asserted that at least a portion of these funds are encumbered by tax liens and the proceeds of the policies have been paid into court to await determination of the validity of the tax liens.

It is the plaintiff's contention that the proceeds of these insurance policies are not subject to the tax liens, and further, that the lien of plaintiff's attorney for one-half of the proceeds in payment for services rendered is superior to any lien which might be claimed by the United States.

Most of the facts in the case were stipulated, with oral testimony and exhibits also being offered in open court. The fire which caused the loss occurred on February 17, 1961 in Kearney, Nebraska, destroying vehicles, parts, equipment, and supplies owned by the plaintiff. Several insurance policies had the plaintiff as named-insured for this property, including policies issued by the two defendants in these actions.

The Tri-State policy covered certain named trucks, each being assigned a loss limit amount. The total of the policy coverage for 16 vehicles was $37,455.00. The American Union policy covered various automobile parts, including tires, oil, grease, and supplies for a total protection of $10,000. As mentioned above, these defendants did not pay, an action was instituted and settlements were finally made for somewhat less than the total policy limits.

On May 8, 1958, the District Director of Internal Revenue made jeopardy assessment of income tax, fraud, penalties and interest against Ray E. Nelson for the year 1947, and against Ray E. Nelson and Galene Nelson [his wife at the time, since divorced] for the years 1948 through 1951. As per statute, Notices of Federal Tax Liens were filed in the office of the Register of Deeds, Buffalo County, Nebraska, on May 10, 1958. The unpaid balance of these liabilities amounted to over $170,000 in December of 1962.

The articles of incorporation were filed for the plaintiff on February 4, 1958. Ray E. Nelson was one of the incorporators and he continued to operate other businesses as a sole proprietor. Seven of the sixteen insured vehicles in question were transferred to plaintiff on July 28, 1958 from Ray E. Nelson or one of his proprietorships. Five of them were bought from third parties. One was transferred to plaintiff on January 15, 1959, from Nelson Motor Company [one of the proprietorships.] after the title was mistakenly made out in the name of the Nelson Motor Company on January 14, 1959. The last one was transferred to the Nelson Motor Company from plaintiff on May 14, 1959. The Government claims a lien only on those nine vehicles which were in the name of Ray E. Nelson or one of his proprietorships at any time after May 10, 1958.

In September of 1960, the Nelson Motor Company transferred certain parts, including tires, oil, grease, etc. to the plaintiff. The American Union insurance policy covered these parts and they were included on an itemized list submitted with the proof of loss. On November 30, 1960, some two months before the fire, this policy was transferred to the plaintiff by endorsement.

The Tri-State policy which covered the sixteen vehicles which were destroyed in the fire was purchased by the plaintiff and covered the period of January 17, 1961, to January 17, 1962.

■■ The Government now contends that since the lien followed the property which had been owned by Ray E. Nelson

into the hands of the plaintiff, 26 U.S.C. 1958 ed. §§ 6321, 6322, 6323, any proceeds gained from the insurance policies must be held subject to the lien also. This is a contention that we are unable to agree with. The rights of the insured under a fire insurance policy are contingent upon the possibility of a future occurrence. In Home Insurance Co. v. B. B. Rider Corporation, [D.N.J., 1953], 212 F.Supp. 457, the court said:

"Where it is entirely uncertain whether the conditional promise to pay will ever become unqualified and enforceable, the interest of a party to the contract is purely contingent, and therefore not 'property and rights to property' to which a tax lien under § 6321 could attach.

" * * * It is apparent that a debtor-taxpayer may prevent the attachment of Government liens by divesting himself of contingent rights to property before they actually vest, for no Government lien attaches to such contingent rights."

Under this thinking, we believe that the transfer of the American policy from Nelson Motor Company to the plaintiff divested the Government of any rights under this policy itself which it had against Ray E. Nelson. Since the plaintiff purchased the Tri-State policy, Nelson never had any individual interest in that policy and it therefore has the same present disposition as the American policy.

The question which must be answered to determine this case, then, is whether or not a Government tax lien can attach to the proceeds of an insurance policy which names a third-party as the insured but which covers property that is a proper subject of the tax lien. It is our opinion that this question must be answered in the negative. An insurance policy is a contract separate and complete in itself. It insures the interest of the insured party in the goods, but does not insure anyone else, unless such other party is included in the contract. There is no statute or law involved herein requiring a person who is in possession of property which is subject to a tax lien to insure the safety of the property on behalf of the United States. The United States has paid no part of the premiums involved in the maintenance of the policy. The plaintiff had the foresight to protect its interest in property by taking out a fire insurance policy so that in the event of calamity it could be indemnified. By what right does the Government step in now and claim that its rights were also protected by this policy? The contract of insurance says nothing about the Government. The plaintiff didn't agree to pay premiums on behalf of the Government. The defendants didn't agree to indemnify the Government for any loss it might incur through destruction of goods over which it claimed a lien.

The following statement is made at page 301 of 9 A.L.R.2d:

"Regarding a policy of property damage insurance as purely a matter of personal contract between the insured and the insurer, the courts, as will be seen by the cases in the subsequent sections of this annotation, adhere to the rule [except in a few isolated cases, or where express statutory provisions to the contrary control], that the holder of a mortgage or other lien on property has no right to the proceeds of insurance taken out thereon by the owner and made payable to himself, where such owner has not bound himself to carry insurance for the former's benefit. The point has also been made in some of the cases that the mortgage or other lien was on the property itself, and did not extend to the proceeds of insurance thereon; likewise, that the proceeds of a policy of insurance represent a debt resulting from the contract of insurance, and not the property.

"It has been observed by the court in some instances that if a lienor desired to protect himself from loss, he might have negotiated a policy

for his own benefit and have protected himself from loss."

Whatever the reasoning be, the general rule is clear. We are of the opinion that the insurance policy is a personal contract which has as its only connection with the property itself the fact that the insured must have an interest in that property to make the insurance contract an enforceable one.

If the insured herein had been the taxpayer, the Government lien would have simply attached to the proceeds of the insurance policy and no problem would have arisen. However, the insured is a third-party and as such does not have the same obligation to the Government. The tax lien cannot attach to the proceeds of an insurance policy in the hands of a third person.

In any event, we believe that had the Government been found to be entitled to the claim it requested, that such claim would have been subject to the attorney's lien. It would be manifestly unjust to allow an attorney to expend all the time, trouble, and effort to trying a case, only to have the United States step in and be preferred over such attorney. We agree with the plaintiff's attorney that were it not for their effort there might never have been such a fund over which to argue. That being the case, the attorneys would be due some proper reimbursement and we believe that the original fee agreed upon between the attorneys and their client should be the sum which the attorneys should receive. Lavenburg v. Universal Sportswear, 1950, 198 Misc. 318, 98 N.Y.S.2d 160.

Accordingly we conclude that the Government is not entitled to the proceeds of either of the insurance policies, and even if it were, its claim would be subject to the attorney's lien.

The foregoing shall constitute findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.

The Complaint in Intervention of the United States is hereby dismissed. The plaintiff will draw a proper order of judgment within fifteen [15] days.