150 N.J. Super. 18 (1977)
374 A.2d 504
CITY OF NEWARK, A MUNICIPAL CORPORATION, PLAINTIFF-RESPONDENT,
v.
CENTRAL AND LAFAYETTE REALTY COMPANY, INC., DEFENDANT-APPELLANT, AND ROYAL GLOBE INSURANCE COMPANIES, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 1977.
Decided May 6, 1977.
*19 Before Judges LORA, CRANE and MICHELS.
Mr. Jay R. Benenson argued the cause for appellant (Messrs. Benenson and McLaughlin, attorneys; Mr. Kenneth Wanio on the brief).
*20 Mr. Leo D. Schwarz, Assistant Corporation Counsel, argued the cause for respondent (Mr. Milton A. Buck, Corporation Counsel, City of Newark, attorney).
The opinion of the court was delivered by LORA, P.J.A.D.
Defendant-appellant Central and Lafayette Realty Company, Inc. (Central) owned an office building in Newark which was gutted by a fire. The improvements on the land were insured by the defendant Royal Globe Insurance Companies for $480,000. Central's insurance claim was settled for $400,600.
Newark had assessed the property in question for $251,900, which represented $176,900 for the land and $75,000 for the improvements. Unpaid real estate taxes and delinquencies for the years 1973-1976 totalled $80,742.91. There is no allegation or proof that Central agreed to insure for the benefit or protection of Newark.
Plaintiff City of Newark sued in the Chancery Division seeking to have Royal and Central enjoined from paying out or receiving any proceeds from any policies covering loss by fire on the premises until plaintiff was paid for costs and expenses to be incurred in demolishing the building and until the tax arrears were satisfied from the proceeds of the insurance policies. The trial judge applied the doctrine of equitable conversion and held that Newark was entitled to satisfy its tax lien out of the proceeds of the fire policy but not the costs of $15,900 incurred by it to demolish the fire-gutted building. Central appeals from that portion of the judgment which directs that the real estate taxes be paid out of the insurance proceeds. Newark has not appealed.
Central first contends that the trial judge erred in expanding the manner in which real estate taxes shall be collected; that proceedings to collect real estate taxes are strictly in rem and the owner of real estate incurs no personal liability for delinquent real estate taxes.
*21 In Murphy v. Jos. Hollander Inc., 131 N.J.L. 165, 170-171 (Sup. Ct. 1943) it was held that
* * * a tax is not a "debt" in the strictly technical sense, and therefore an action in debt will not lie for its recovery, * *

* * * * * * * *
Where the legislature has provided a special method for the collection of taxes, such is ordinarily an exclusive procedure, and remedies based upon general legal rules may not be invoked. The maxim "expressio unius est exclusio alterius," governs in the absence of provision otherwise, express or fairly to be implied. Freeholders of Atlantic v. Weymouth, 68 N.J.L. 652, supra; Baker v. East Orange, 95 N.J.L. 365, affirmed, 96 Id. 267. Yet, where the statutory means of collection have been exhausted, resort to other measures to enforce payment of the tax, and thus to obviate a failure of justice, have been deemed legally justifiable; and the tax is considered a "debt" in the sense of an obligation or liability for which a creditors bill will lie.
See also, Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 310-311 (1951); Wrightstown v. Salvation Army, 97 N.J.L. 89, 90-91 (Sup. Ct. 1922); Camden v. Allen, 26 N.J.L. 398, 399-400 (Sup. Ct. 1857).
The Legislature has provided specific statutory means by which Newark can collect its delinquent taxes, i.e., the Tax Sale Law (N.J.S.A. 54:5-1 et seq.), and the supplementary In Rem Tax Foreclosure Act (N.J.S.A. 54:5-104.29 et seq.). Since Newark has concededly not begun to avail itself of the statutory means to enforce collection, much less exhausted them, we are of the view that the trial judge erred in expanding the manner in which real estate taxes could be collected.
Further, we are in accord with Central's contention that a tax on real estate is simply a lien against the real estate on which the taxes were assessed and not a personal obligation of the landowner. In re Taylor, 30 N.J. Super. 65, 69-70 (Cty. Ct. 1954); Bea v. Turner & Co., 115 N.J. Eq. 189, 192 (Ch. 1934); Wrightstown v. Salvation Army, supra, 97 N.J.L. at 91. Plaintiff is then precluded from obtaining a personal judgment against Central in order to satisfy the tax lien.
*22 Central next maintains that the trial judge erroneously extended the doctrine of equitable conversion in order to bring the situation here involved within its comprehension. We agree. As stated by then Judge (later Chief Justice) Weintraub in N.J. Highway Auth. v. Henry A. Raemsch Coal Co., 40 N.J. Super. 355 (Law Div. 1956) 
The doctrine of equitable conversion * * * was devised to assure justice between the parties to a real property transaction. It is a fiction of law, and, as such, cannot be extended beyond the special purposes which it was created to serve. It does not transmute a fund into real estate so as to subject the fund to taxation as real property. The land remains land and the fund remains personalty insofar as subsequent local taxation is concerned. [at 361]
The doctrine has been invoked in a suit for specific performance brought by a vendee against his vendor so as to entitle the vendee to the proceeds of an insurance policy placed on the property by the vendor. See Wolf v. Home Ins. Co., 100 N.J. Super. 27, 50 (Law Div. 1968), aff'd o.b. 103 N.J. Super. 357 (App. Div. 1968); Millville Aerie, F.O. of E. v. Weatherby, 82 N.J. Eq. 455, 457-458 (Ch. 1913). But, Cf. In re Estate of Houghton, 147 N.J. Super. 477 (App. Div. 1977).
See also, Noyes v. Estate of Cohen, 123 N.J. Super. 471 (Ch. Div. 1973), where, in its discussion of the doctrine of equitable conversion, the court said:
* * * the doctrine [of equitable conversion] is most frequently applied in solving questions concerning the validity and execution of trusts, the legal character of the interests of the beneficiaries, the devolution of property as between real and personal representatives, and for other similar purposes. 27 Am. Jur.2d Equitable Conversion, § 3. [at 479]
Central further argues that the contract of fire insurance being personal, it does not run with the land and therefore Newark is not entitled to the proceeds of the fire insurance policy to satisfy the tax lien.
*23 It is generally held or recognized that insurance contracts are merely personal ones between the insurer and the insured. A contract of fire insurance, for example, appertains to the person or party to the contract, and not to the thing which is subjected to the risk against which the owner is protected. Accordingly, in the absence of assignment or of express stipulations of the parties to such an effect, contracts of insurance do not attach to or run with the property insured, whether the property is real or personal. In case of a conveyance or assignment of the property, they do not go with it as an incident thereto, but are, rather, special agreements with the persons insured, against such loss or damages as they may sustain. [43 Am. Jur.2d, Insurance, § 194 at pp. 249-250 (1969)]
Our courts have recognized the personal nature of insurance contracts. The London Assurance v. Bigeleisen, 135 N.J. Eq. 564, 568-569 (E. & A. 1944); Crown Fabrics Corp. v. Northern Assur. Co., Ltd., 124 N.J.L. 27, 30-31 (E. & A. 1940).
Research has disclosed no reported New Jersey case on the specific issue before us. However, as noted in 5 Couch on Insurance, 2d, § 29:171 at 476 (1960):
A contract of fire insurance, being personal to the insured, does not, in the absence of contract stipulation, inure to the benefit of the holder of a lien on the property insured. Accordingly, the city which had a mere lien on the insured property for delinquent taxes but had no contractual relation with the insured was not entitled to any portion of the proceeds of insurance on such property. The holder of a tax sale certificate being a mere lienholder has no right to the proceeds of insurance on the property.
See also, "Annotation, Right of holder of mortgage or lien to proceeds of property insurance payable to owner not bound to carry insurance for former's benefit," 9 A.L.R.2d 299, 309 (1950): "[t]he courts have denied the right of the holder of a tax lien to the proceeds of insurance on the property subject to the lien, upon loss or damage of the property which was insured."
Thus, it was held in City of Utica v. Park-Mill Corporation, 41 N.Y.S.2d 248 (Sup. Ct. 1943), that the city had no right to the proceeds of insurance, by way of tax lien, upon property destroyed by fire, notwithstanding the *24 city, by statutory compulsion, had paid annually to the county the amount of all county taxes returned by the delinquent tax clerk as unpaid. While the court recognized that equity urged in favor of plaintiff's claim, it was constrained to conclude the city's lien against the realty did not attach to the insurance proceeds. Accord, see Shelton v. Providence Washington Ins. Co., 131 S.W.2d 330, 332 (Tex. Civ. App. 1939); Street v. Beaufort Fish Scrap & Oil Co., 201 N.C. 410, 160 S.E. 460 (Sup. Ct. 1931); Crook v. Hartford Fire Ins. Co., 175 S.C. 42, 178 S.E. 254 (1935). Cf. Ray E. Nelson Transp. Co. v. Tri-State Ins. Co., 231 F. Supp. 492 (D. Neb. 1964).
Finally, there is merit to Central's contention that the trial judge ignored the principle that equity follows the law.
While [equity] will provide means of enforcement not to be had at law, it is bound to regard the rights of the parties as established at law unless a countervailing equity calls for relief. The maxim is applicable to the interpretation of statutes and as well to matters of public policy. [Camden Trust Co. v. Handle, 132 N.J. Eq. 97, 108 (E. & A. 1942)]
Here, the rights and obligations of the parties can be established at law. Concededly it would be less burdensome for plaintiff to satisfy its tax lien out of the insurance proceeds, but plaintiff is not without an adequate remedy at law.
Reversed and remanded to the Chancery Division for entry of judgment in favor of the defendant-appellant.