GARDEN STATE RACING ASSOCIATION, PLAINTIFF, v. THE TOWNSHIP OF CHERRY HILL, DEFENDANT.

Tax Court of New Jersey

October 28, 1980.

570

*Tomar, Parks, Seliger, Simonoff & Adourian* for plaintiff (*Charles L. Winne* appearing).

*Ralph J. Kmiec* for defendant Township of Cherry Hill.

RIMM, J. T. C.

This matter was before the court on June 12, 1980 on a motion by the Bank of New Jersey, the plaintiff's successor in interest as a trustee, to enforce litigant's rights. The trustee seeks an order requiring the township to pay refunds due because of judgments reducing tax assessments on certain properties and to pay interest on the refunds. The township denies that it is

obligated to make such payments. It seeks to offset the refunds against taxes due to the township on another property on which the trustee holds a mortgage. The facts are not in dispute and are readily ascertainable from the briefs submitted in support of and in defense against the motion and from oral argument.

The Garden State Racing Association, a New Jersey corporation, hereafter the association, was the owner of the Garden State Racetrack, the Cherry Hill Inn and the Cherry Hill Lodge. The three properties are separate and distinct. The inn is tax Lot 2 in Block 285; the lodge is tax Lot 1B in block 285B; and the racetrack consists of 18 other separate but contiguous tax lots located in various blocks. While the association was the owner of the inn and the lodge, it filed tax appeals for those two properties for the tax years 1975, 1976 and 1977. On April 10, 1978, the association distributed all of its assets in complete liquidation to the trustee under the Garden State Racing Association Liquidation Trust.

On June 11, 1978, the trustee sold the racetrack to Garden State Park, Inc., the present owner of the racetrack, taking back a first purchase money mortgage in the amount of $15,740,000. The mortgage is now in foreclosure. The trustee also filed a tax appeal for the inn for the tax year 1978.

The appeals originally filed by the association for the tax years 1975, 1976 and 1977 resulted in the entry of judgments in the Division of Tax Appeals on December 27, 1979, reducing the assessments of the inn and the lodge. The refunds of taxes due to the owner of the inn and the lodge were as follows:

|      | Inn | Lodge |
|------|-----|-------|
| 1975 | $ 57,700.25 | $ 32,627.66 |
| 1976 | 64,205.85 | 35,069.59 |
| 1977 | 68,586.84 | 38,045.28 |
|      | $ 190,492.94 | $ 105,742.53 |

The present owner of the racetrack has not paid the real estate taxes for the track for the second, third and fourth quarters of 1979 and for the first and second quarters of 1980. The taxes

due on the racetrack exceed the amount of the refunds due for the inn and the lodge.

The separate tax appeal filed by the trustee for the tax year 1978 for the inn resulted in the entry of a judgment on February 25, 1980 pursuant to a settlement between the parties. The assessment on the inn for the year 1978 was reduced, and a tax refund of $62,663.14 was due to the trustee. This refund was paid by the township to the trustee in March 1980, together with interest in the amount of $4,013.88. The township claims that the payment resulted from an administrative error or oversight, and that it never should have made the payment to the trustee. No legal effect is given to the payment of the refund by the township to the trustee, although such payment was due from the township and properly made.

The trustee requested payment of the tax refunds due for the inn and the lodge, but payment was refused by the township on the ground that the township has the right to apply the refunds due to the owner of the inn and the lodge against the taxes due to the township on the racetrack. The township argues that, since the mortgage held by the trustee on the racetrack is in foreclosure, the trustee is obligated to pay the taxes due on the racetrack. This position is based on a provision in the mortgage that the holder of the mortgage has the option of paying real estate taxes due on the real estate covered by the mortgage. The township translates the option into an obligation to pay such taxes and claims that it has the right to offset the refund due to the trustee for the inn and the lodge against the taxes due on the racetrack.

■ Taxes on real estate in New Jersey under *N.J.S.A.* 54:4–1 and 54:4–23 are not the personal obligation of the owner of the real estate. Taxes are assessed against the fee and are a lien on it. *Crewe Corp. v. Feiler*, 28 *N.J.* 316, 146 *A.2d* 458 (1958); *Becker v. Little Ferry*, 126 *N.J.L.* 338, 19 *A.2d* 657 (E. & A. 1941). They are collected in accordance with the specific statutory remedy of foreclosure of the lien. The Tax Sale Law, *N.J.S.A.* 54:5–1 *et seq.*, provides in part:

Taxes on lands shall be a lien on the land on which they are assessed on and after the first day of January of the year for which the taxes are assessed, and all interest, penalties and costs of collection which thereafter fall due or accrue shall be added to and become a part of such lien. *N.J.S.A.* 54:5–6.

The In Rem Tax Foreclosure Act, *N.J.S.A.* 54:5–104.29 *et seq.*, provides for the municipality to proceed in rem, *N.J.S.A.* 54:5–104.32. It specifically states that no personal judgment shall be entered against any person in any proceeding under the act, *N.J.S.A.* 54:5–104.33. These statutory methods of collection of delinquent taxes evidence the legislative determination that real estate taxes are liens or levies on land and are not the personal obligation of the owner of the land. The case law implements this determination. A municipality has a statutory lien on the real estate for the taxes assessed thereon, but no personal liability is imposed on the owner of the real estate for the taxes. *Rothman v. Borough of River Edge*, 149 *N.J.Super.* 435, 374 *A.* 2d 43 (App.Div.1977) *cert.* den. 75 *N.J.* 19, 379 *A.2d* 250 (1977).

In *Newark v. Central & Lafayette Realty Co., Inc.*, 150 *N.J.Super.* 18, 374 *A.2d* 504 (App.Div.1977) *cert.* den. 75 *N.J.* 528, 384 *A.2d* 508 (1977), the court held that the plaintiff could not satisfy its tax lien from the defendant's fire insurance proceeds because the defendant had no personal liability for the taxes. The defendant's building was gutted by fire and its claim was settled for $400,600. Unpaid real estate taxes for the years 1973–1976 totaled $80,742.91. The city sued in the Chancery Division of the Superior Court to enjoin the defendant's receipt of its insurance proceeds. The city prevailed by the trial judge's holding that there had been an equitable conversion and that it was entitled to satisfy its tax lien from the fire insurance proceeds. The Appellate Division rejected the applicability of the doctrine of equitable conversion; dealt directly with the nature of the tax obligation; and reversed the trial court judgment in favor of the city stating "a tax on real estate is simply a lien against the real estate on which the taxes were assessed and not a personal obligation of the landowner." *Id.* at 21, 374 *A.2d* 504. In *N.J. Highway Auth. v. Henry A. Raemsch Coal Co.*, 40 *N.J.Super.* 355, 123 *A.2d* 83 (Law Div. 1956), the court also said that the owner of real property is not personally

liable for real estate taxes assessed against his property. In that case Judge, later Chief Justice, Weintraub denied the municipality the right to satisfy tax liens from the funds of an excess deposit made after the original taking by the plaintiff. The funds were those of the property owner, and, although arising from the taking by the authority, they were not available to the municipality for the satisfaction of local property taxes.

The township cites *Rothman v. Borough of River Edge, supra,* as authority for its right to an offset. The case does not support the township's position. The court permitted an offset of a refund due as a result of reductions in the assessments for 1970 and 1971 against the amount due on account of the underpayment of taxes for 1972 and 1973 for the *same* property. The court cited no authority for its conclusions, but did state that if the amount due the borough exceeded the amount due the taxpayers, the Law Division could not enter a judgment for the excess against the taxpayers. Such excess was a lien against the premises. The court cited *N.J.S.A.* 54:5–6; *Bea v. Turner & Co.,* 115 *N.J.Eq.* 189, 192, 169 *A.* 832 (Ch. 1934); *In re Taylor,* 30 *N.J.Super.* 65, 69, 103 *A.2d* 268 (Cty. Ct. 1954), and *Bonnet v. State,* 141 *N.J.Super.* 177, 278, 357 *A.2d* 772 (Law Div. 1976) [aff'd 155 *N.J.Super.* 520, 382 *A.2d* 1175 (App.Div.1978)], recognizing the basic concept that taxes are a lien on the real property and not a personal obligation of the owner. The township also relies on the *Town of West Orange v. Block 107,* 162 *N.J.Super.* 314, 392 *A.2d* 1213 (App.Div.1978). The Appellate Division affirmed the trial judge's refusal to stay an in rem tax foreclosure, pending the outcome of tax appeals, unless the taxpayer paid certain taxes. In doing so, the court said that the collection of admittedly due taxes cannot be permitted to rest with the unilateral business judgment of a taxpayer. Actually *West Orange* is contrary to the township's position. To effect collection of the admittedly due taxes, West Orange proceeded with an in rem tax foreclosure action, precisely what the township should do here to effect collection of the delinquent taxes due on the racetrack when the statutory time requirements are

met. The Legislature has indicated the method for collecting delinquent taxes and has prescribed the period of time delinquent taxes may remain delinquent before a municipality may foreclose a tax lien. The township would have this court ignore this time period which was recently shortened by Chapter 91 of the Laws of 1974, *N.J.S.A.* 54:5-104.34. This the court will not do. Our courts recognize that "enforcing the collection of municipal taxes" involves an area "of special legislative concern," and judicial deference ought to be paid to the Legislature's expression of public policy in the area. *New Shrewsbury Borough v. Block 115, Lot 4,* 74 *N.J.Super.* 1, 180 *A.*2d 387 (App.Div.1962).

The court must also consider *N.J.S.A.* 2A:16-8 which provides:

Whenever any judgment is recovered in an action in any court of competent jurisdiction in this state, against any municipality by any person who is, at the time of the recovery of the judgment, indebted to such municipality upon any indebtedness of a public nature, including taxes, assessments or water rates which constitute an indebtedness, or who shall become so indebted before the satisfaction of the judgment, such municipality may apply to the court in the action for an order to reduce or extinguish the judgment, and any execution issued thereon, by offsetting and crediting against the same any such indebtedness;

and its predecessor statute, *R.S.* 2:27–255, which provided:

Whenever any judgment shall be or shall have been recovered in any court of competent jurisdiction in this state, against any municipality by any person who is or shall have been, at the time of the recovery of such judgment, indebted to such municipality for taxes, assessments, water rates, or other indebtedness of a public nature, or who shall become so indebted before the satisfaction of such judgment it shall be lawful for such municipality to settle and extinguish such judgment, and any execution issued thereon, by offsetting and crediting the amount thereof upon and against any overdue taxes, assessments, water rates, or other indebtedness of a public nature due from such judgment creditor. [*L.* 1917, *c.* 152, Art. 37 § 21, p. 460]

There are certain taxes and assessments which are, or were "debts" by statute. The owner of personal property was personally liable for taxes thereon. *N.J.S.A.* 54:4-1. Such liability was eliminated by *L.* 1966, *c.* 138, § 1, effective June 17, 1966. Under *N.J.S.A.* 40:14A-21 (f), a municipal sewerage authority, is authorized to bring a civil action for any unpaid service charge, although the tax collector is required to include in his tax sale the delinquent real property affected thereby. *N.J.S.A.* 40:14A–

21(e). Under *N.J.S.A.* 40:14B–46 a municipal utility authority is authorized to bring a civil action for the recovery of water and sewage disposal charges, although the tax collector in such case is also required to include in his tax sale the premises in question. *N.J.S.A.* 40:14B–45. Under the Tax Sale Law, *N.J.S.A.* 54:5–1 *et seq.*, the tax collector is mandated to include such charges in the sale. *N.J.S.A.* 54:5–21; *N.J.S.A.* 54:5–40. There are other such municipal charges or assessments for which the owner of the lands assumes a personal liability. The basis for such liability is that the municipal service rendered is founded on contract. *Bea v. Turner & Co., supra,* at 192, 169 *A.* 832; *Lehigh Valley R.R. Co. v. Jersey City,* 103 *N.J.L.* 574, 576, 138 *A.* 467 (Sup.Ct.1927); *Diorio v. Fair Lawn,* 118 *N.J.Eq.* 556, 560, 180 *A.* 557 (Ch. 1935).

Our courts have not dealt with *N.J.S.A.* 2A:16–8, but they have construed the predecessor statute in connection with real estate taxes. *R.S.* 2:27–255 was considered in *Francis Realty Co. v. Newark,* 16 *N.J.Misc.* 328, 199 *A.* 912 (Essex Co. Cir. Ct. 1938). A refund resulting from a reduced assessment was credited against taxes due on the same property for the year subsequent to the year under appeal. The taxpayer sued to recover the refund. The city justified the offset on the basis of the statute. The court said that the determination of the Board of Tax Appeals does not fix liability for payment but settles only the amount of the assessment. The statute was therefore said to be hardly applicable since it refers to a judgment recovered by the taxpayer. Regardless of this approach, however, the court held that the statute was inapplicable and did not give a right of offset. An offset was authorized only when the taxpayer "is indebted to the municipality for taxes." "A tax against real estate is not a debt of the owner; it is not founded on a contract express or implied but is an imposition against the property and no personal liability attaches." *Id.* at 330, 199 *A.* 912. This decision was cited with approval in *Binder Realty Corp. v. Newark,* 19 *N.J.Misc.* 624, 22 *A.2d* 359 (Sup.Ct.1941) where the court also would not permit the municipality to offset taxes due for a subsequent year against a refund due because of a reduced assessment for a prior year on the same property.

In *Brunner v. Morrison*, 123 *N.J.Eq.* 224, 196 *A.* 716 (E. & A. 1937), a case involving the reverse proposition, namely the attempt of a taxpayer to offset a claim against a municipality against taxes due from the taxpayer, the Court of Errors and Appeals denied the offset and said:

> What, in the final analysis, are taxes? Our courts have uniformly held that a tax in its essential characteristics is not a debt, nor in the nature of a debt. A property tax is an exaction, an impost, levied by authority of a municipality upon property within its borders for the support of the municipality. It is neither a debt nor a contractual obligation. It is a charge upon the land in question. [at 227, 196 *A.* 716; citations omitted]

The current statute may be regarded as having adopted the holding of *Francis Realty Co. v. Newark, supra.* The *Note of Reporter* to the present statute in the Revision of Titles 2 and 3, Revised Statutes of New Jersey, Tentative Draft, prepared by Reporters for the Advisory Committee on Revision of Statutes, 1951, states:

> The suggested amendment more definitely indicates how to secure the set–off and also allows for a partial credit. Attention is called to *Francis Realty v. Newark*, 16 *N.J.M.* 328, 199 *A.* 912. No attempt has been made to cover the situation disclosed in that case. [*Note of Reporter* at 55]

Local property taxes arising from an assessment on real estate under *N.J.S.A.* 54:4–1 and *N.J.S.A.* 54:4–23 are not an indebtedness of a public nature; do not constitute an indebtedness; and cannot be offset under *N.J.S.A.* 2A:16–8 against a refund due to the taxpayer resulting from a reduced tax assessment. A person who owns real estate on which taxes are due to the municipality is not a "person who is . . . indebted to such municipality." The obligation to the municipality arises from the levy on the land and not from a debt of the owner. *Brunner v. Morrison, supra.*

Since the case now before the court involves separate properties and not the same tax lot, the conflict between the *Francis* and *Binder* cases and the case of *Rothman v. Borough of River Edge, supra*, is not considered.

In addition to a method for the collection of taxes, the statutes also specifically provide for a "refund" of any excess taxes in the event of a reduced assessment. *N.J.S.A.* 54:3–27.2

provides that if a taxpayer is successful in an appeal from an assessment on his property, the "taxing district *shall refund* any excess taxes paid." [Emphasis added] Refund is a transitive verb which means ". . . 2. to repay; to give back or pay back (money, etc.) in restitution, in compensation for overpayment, etc.; . . . 3. to make repayment to; reimburse (a person). *The Webster's Unabridged International Dictionary of the English Language* 1519 (Bicen. Encyc. Ed. 1976). Refund also means "to repay or restore; to return money in restitution or repayment; *e. g., to refund overpaid taxes.*" [Emphasis added] *Black's Law Dictionary* 1152 (5th Ed. 1979). Refund does not mean offset.

This statute is part of the overall method for the collection of taxes.

> Where the legislature has provided a special method for the collection of taxes, such is ordinarily an exclusive procedure, and remedies based upon general legal rules may not be invoked. The maxim *"expressio unius est exclusio alterius,"* governs in the absence of provision otherwise, express or fairly to be implied. [*Newark v. Central & Lafayette Realty Co., Inc. supra*, at 21, 374 A.2d 504, quoting *Murphy v. Jos. Hollander Inc.*, 131 N.J.L. 165, 170–171, 34 A.2d 780 (Sup.Ct.1943)]

The only "provision otherwise" is *N.J.S.A.* 54:4–8.2 which allows a taxpayer to claim a credit for a refund due on account of a reduced assessment against taxes due on the *same* property. To the extent that this section has been considered with regard to the municipality's right to credit any refund because of a tax reduction, such a right is limited to the same property and the same owner. *The Manhattan Life Ins. Co. v. Jersey City*, 22 *N.J.Misc.* 66, 35 A.2d 25 (1st D.C. Hudson Co. 1943). The *Rothman* case reaches the same conclusion when the same property is involved without reference to the statute. The township's position is therefore defective for two reasons: (1) it is obligated to "refund" the excess taxes it has received; and (2) it is obligated to collect delinquent taxes by an in rem tax foreclosure action. The express provision for refund and fore-closure implies the exclusion of offset.

■ The municipality nevertheless seeks to have this court exercise its equitable powers under *N.J.S.A.* 2A:3A–4 and mold an equitable remedy whereby it may offset a tax refund due on

one property against taxes due to the municipality on another property. It is only equitable, the municipality contends, to permit the offset because: (1) the municipality needs the money, the lack of which has an adverse impact on its tax rate; and (2) there would be considerable administrative ease afforded the municipality in the collection of real estate taxes. While there is no doubt that this court has broad jurisdiction to grant equitable relief, *N.J.S.A.* 2A:3A–4, this case is not an appropriate one for granting such relief. The tax collecting procedure is delineated in the statutes of this State, and it is that procedure which a municipality is to follow in collecting its taxes. When this court exercises its equitable jurisdiction, it must do so within the limitations imposed on any court of equity. One of those limitations is the maxim that equity follows the law. The statutory law here, In Rem Tax Foreclosure Act, *N.J.S.A.* 54:5–104.29 *et seq.*, and *N.J.S.A.* 54:3–27.2, *Refund of excess taxes; interest*, will be followed by this court. *Camden Trust Co. v. Handle*, 132 *N.J.Eq.* 97, 108, 26 *A.2d* 865 (E. & A. 1942); *Newark v. Central & Lafayette Realty Co., Inc., supra.* This court may not extend the statutory remedy available to the township. *1 Pomeroy, Equity Jurisprudence*, Sec. 425 (4th Ed. 1918). Concededly it would be less burdensome for the township to satisfy its tax lien on the racetrack out of the refunds, but such a remedy is repugnant to existing law, and the township is not without an adequate statutory remedy. To the same effect is *Newark v. Central & Lafayette Realty Co., Inc., supra*, at 24, 374 *A.2d* 504. In the present case, the taxpayer made payments in accordance with the law. The taxpayer is entitled to receive its refunds in accordance with that same law. The refunds due because of the reductions in the tax assessments for the years 1975, 1976 and 1977 shall forthwith be paid by the municipality to the trustee.

The trustee also seeks interest on the refunds claimed, costs and legal fees, and a fine of $500 per day for each day the refunds are not paid. No reason is advanced for the imposition of a fine, and no reason for such an imposition appears to the court. Similarly, the trustee is not entitled to costs and legal

fees. While there may be a fund in the hands of one of the parties, it is not a fund in court. *R.* 4:42–9. Nor is there any other basis for the award of costs and fees in this case. *Van Horn v. City of Trenton*, 80 *N.J.* 528, 538, 404 *A.*2d 528 (1979); *The Penwag Property Co., Inc. v. Landau*, 76 *N.J.* 595, 388 *A.*2d 1265 (1978). The trustee's application for a fine and for legal fees and costs is denied. The trustee is however entitled to interest on the refunds for both the inn and lodge for the tax year 1977 in accordance with *N.J.S.A.* 54:3–27.2, but not for the years 1975 and 1976.

Interest is not recoverable on a reduction of a tax liability unless there is a statutory provision for such interest. *Hahne Realty Corp. v. Newark*, 119 *N.J.L.* 12, 194 *A.* 191 (E. & A. 1937); *Edgewater v. Corn Products Refining Co.*, 136 *N.J.L.* 664, 57 *A.* 2d 39 (E. & A. 1948); *713 Co. v. Jersey City*, 94 *N.J.Super.* 210, 227 *A.*2d 530 (Law Div. 1967). Reference must therefore be had to *N.J.S.A.* 54:3–27.2, *Refund of excess taxes; interest,* which now provides for a refund within 60 days of final judgment of excess taxes paid together with interest from the date of payment at the rate of 5% per annum. Prior to its amendment, effective January 31, 1978, the statute provided for interest at the rate of 8% per annum with payment to be made within 50 days of the date of final judgment. The effective date of the original statute was January 1, 1977 in accordance with § 4 of *L.* 1975, *c.* 361, approved March 3, 1976, which provided, "This act shall take effect for purposes of the tax year next following enactment and thereafter." The original bill enacted into these sections of the statutes was Assembly, No. 1276. The Senate Revenue, Finance and Appropriations Committee Statement to that bill, dated January 27, 1975 states in part:

> The effective date of the bill has been amended to have the provisions of the bill effective commencing with the tax year next following enactment. *Thus, all appeals from the tax year forward will be affected.* Any appeals under the existing statutes will be treated in the same manner, thereby providing equal treatment to all taxpayers. The new provision commences with a new tax year. [Emphasis added]

The statute does not apply to 1975 and 1976, and the taxpayer is not entitled to interest for payments made during those years

under *N.J.S.A.* 54:3–27.2. Such a result is also dictated by Section 1 of the same act, *N.J.S.A.* 54:3–27, *Payment of tax pending appeal,* which, for the first time, compelled the payment of taxes as a condition of the taxpayer's right to appeal. There was no compulsion to pay taxes to perfect an appeal until the tax year 1977. *L.* 1975, *c.* 361, § 4. Interest on the refund due for the tax year 1977 will be computed from the date of payment of the taxes until the refund is made. Interest shall be at the rate of 8% per annum in accordance with the statute in effect during the tax year in question, namely 1977, when the appeal was perfected. Since the taxpayer was compelled in that year to pay his taxes in order to perfect his appeal, the taxpayer is entitled to the interest provided for in the statute in effect at the time of such payment. The courts of this state have said that municipalities, like individuals, are bound by principles of fair dealing. *Palisades Properties, Inc. v. Brunetti,* 44 *N.J.* 117, 131, 207 *A.*2d 522 (1965); *Hankin v. Hamilton Tp. Bd. of Education,* 47 *N.J.Super.* 70, 78, 135 *A.*2d 329, (App.Div.1957). Although a statute is involved and not a local ordinance, the beneficiary of the statute compelling payment of taxes is the municipality. If a taxpayer pays his taxes at a time when he is told, under the law, he will receive 8% on any refund, fair dealing requires that the rate of interest not be changed between the time of payment and the time of refund. The amendment to the statute effective January 31, 1978 reducing interest to 5% applies to taxpayers perfecting appeals thereafter. They know they are only entitled to 5% interest if they are successful in their appeals.

■ Remaining for determination is the question of post judgment interest. At the hearing counsel for the township indicated that the earliest possible date for payment of the refund, if ordered, would be July 18, 1980. That date is reasonable, and even though the refund under the applicable statute was not paid within 50 days of final judgment no increase beyond 8% will be allowed for the refund due for the tax year 1977. However, if payment of the refunds due for the tax years 1975 and 1976 is not made by July 18, 1980, those refunds will

accrue interest at the rate of 8% per annum from and after July 19, 1980. *713 Co. v. Jersey City, supra,* and *N.J.S.A.* 2A:3A–4.

Counsel for the trustee will submit an order in accordance with this opinion under *R.* 4:42–1 (b) and *R.* 8:9–3.