PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2053

_____

THE TOWNSHIP OF LYNDHURST, NEW JERSEY
on behalf of itself and all similarly situated taxing
authorities within the State of New Jersey,

Appellant

v.

PRICELINE.COM INC.; LOWESTFARE.COM;
TRAVEL WEB LLC; TRAVELOCITY.COM, INC.;
TRAVELOCITY.COM, L.P.; SITE59.COM,
LLC; EXPEDIA, INC.; HOTELS.COM, L.P.;
HOTWIRE INC.; TRAVELNOW.COM, INC.;
ORBITZ WORLDWIDE, INC.;
TRAVELPORT AMERICAS, LLC; TRIP NETWORK, INC.,
doing business as CHEAP TICKETS, INC.; ORBITZ, LLC

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-08-cv-03033)
District Judge: Honorable Jose L. Linares

_____

Argued June 10, 2010

_____

Before: AMBRO, CHAGARES,
and GREENAWAY, JR., <u>Circuit Judges</u>

(Opinion filed : September 14, 2011 )

John M. Agnello, Esquire
James E. Cecchi, Esquire (Argued)
Lindsey H. Taylor, Esquire
Carella, Byrne, Cecchi, Olstein, Brody & Agnello
5 Becker Fram Road
Roseland, NJ   07068

      Counsel for Appellant

Melissa C. Fulton, Esquire
Michael R. Griffinger, Esquire
Gibbons
One Gateway Center
Newark, NJ   07102-5310

Randolph K. Herndon, Esquire
Karen L. Valihura, Esquire
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square, Room 6-23
P.O. Box 636
Wilmington, DE   19899

Brian S. Stagner, Esquire
Scott R. Wiehle, Esquire
Suite 2500
201 Main Street
Fort Worth, TX   76102

Lazar P. Raynal, Esquire
Jeffrey A. Rossman, Esquire (Argued)
Michael W. Weaver, Esquire
McDermott, Will & Emery
227 West Monroe Street, Suite 5200
Chicago, IL   60606

Counsel for Appellees

OPINION OF THE COURT

AMBRO, Circuit Judge

The Township of Lyndhurst, New Jersey, brought this putative class action "in its capacity as a taxing authority" on behalf of itself and all other similarly situated New Jersey municipalities, townships, and counties.[1]   It alleges that

_____

[1] The putative class includes "every municipality, township, and county in the State of New Jersey that, by ordinance authorized under N.J. Stat. Ann. § 40:48F-1, imposes

3

defendants—all companies who operate hotel booking sites online—owe the putative class unpaid hotel occupancy taxes.[2] The District Court granted defendants' motion to dismiss on prudential standing grounds, concluding that Lyndhurst did not have the right to sue for the alleged taxes owed under the relevant statutory scheme. Instead, that enforcement right was given to the State of New Jersey's Director of Taxation (the "Director"), aided by the State's Attorney General (the "Attorney General").[3] For the reasons that follow, we affirm.

## I. STATUTORY BACKGROUND

Lyndhurst is a political subdivision of the State of New Jersey. "As a general principle, it is established beyond question that [such] municipalities, being created by the State,

---

a tax on charges of rent for every occupancy of a room or rooms in a hotel."

[2] Defendants in this case are Priceline.com Inc., Lowestfare.com LLC, Travelweb LLC, Travelocity.com, Inc., Travelocity.com L.P., Site59.com, LLC, Expedia, Inc., Hotels.com, L.P., Hotwire, Inc., TravelNow.com, Inc., Travelport Americas, LLC, Trip Network, Inc., Orbitz, LLC, and Orbitz Worldwide, Inc.

[3] The Director is head of the New Jersey Division of Taxation, which is a division within the New Jersey Department of the Treasury. *See* N.J. Stat. Ann. §§ 52:18A-1, -3; 52:27B-49.

have no powers save those delegated to them by the Legislature and the State Constitution." *Dome Realty, Inc. v. City of Paterson*, 416 A.2d 334, 341 (N.J. 1980).[4] This case involves two distinct powers under N.J. Stat. Ann. §§ 40:48F-1 to -5 (the "Enabling Act"): 1) the power to enact a local hotel occupancy tax; and 2) the subsequent power to enforce it.[5] The text of the Enabling Act speaks to each of these powers, as well as to the substantive reach of any ordinance enacted under this statutory scheme.

## A.    The Enactment Power and the Hotel Occupancy Tax's Substantive Reach

The Enabling Act's grant of power to enact local hotel occupancy taxes varies based on the "class" of the political subdivision at issue. For general classification purposes, cities of the "first class" have populations of greater than

---

[4] Under New Jersey law, a "municipality" is defined as a "municipal corporation," and "[t]he words 'municipality' and 'municipal corporation' include cities, towns, townships, villages[,] and boroughs." N.J. Stat. Ann. § 1:1-2.

[5] After we heard oral argument, the New Jersey legislature amended the Enabling Act to add two new provisions, N.J. Stat. Ann. §§ 40:48F-6 and -7. Though the latter is not relevant to this case, Lyndhurst argues that the former is, an argument we answer in n.14 below.

150,000, while cities of the "second class" have populations between 12,000 and 150,000. *See* N.J. Stat. Ann. §§ 40A:6-4(a), (b).[6] It is undisputed that Lyndhurst is a city of the "second class" and that its enactment power is governed by N.J. Stat. Ann. § 40:48F-1, which permits it to "*adopt* an ordinance imposing a tax . . . on charges of rent for every occupancy . . . of a room or rooms in a hotel." (Emphasis added).[7] Lyndhurst exercised this authority by adopting (that

---

[6] As noted below, the distinctions based on these classifications are more nuanced, as cities of the "second class" with international airports have the same powers as cities of the "first class."

[7] In full, the provision reads as follows:

The governing body of a municipality, *other than* a city of the first class or a city of the second class in which the tax is authorized under [N.J. Stat. Ann. § 40:48E-3] is imposed, a city of the fourth class in which the tax is authorized under [N.J. § 40:48-8.15 *et seq.*] is imposed, or a municipality in which the tax and assessment authorized under [N.J. Stat. Ann. § 40:54D-4] is imposed, may *adopt* an ordinance imposing a tax, at a uniform percentage rate not to exceed 1% on charges of rent for every occupancy on or after July 1, 2003, but before July 1, 2004, and not to exceed 3% on charges of rent for every occupancy on or after July 1, 2004, of a room or rooms in a hotel subject

is, enacting) such a tax, as did each member of the putative plaintiff class.[8]     Even as the New Jersey legislature provided Lyndhurst with the power to enact such a tax ordinance, it (the legislature) also placed limits on the ordinance's substantive reach.  In short, the Enabling Act only permitted Lyndhurst to impose a local hotel occupancy tax on transactions that were already subject to the Sales and Use

_____

> to taxation pursuant to [the Sales and Use Tax Act, N.J. Stat. Ann. § 54:32B-3].

N.J. Stat. Ann. § 40:48F-1 (emphases added).  Cities of the "second class" with international airports are governed by a different provision.  *See id.* § 40:48E-3.

[8] Lyndhurst's hotel occupancy tax ordinance reads as follows:

> There is hereby established a hotel and motel room occupancy tax in the Township of Lyndhurst which shall be fixed at a uniform percentage rate of one percent on charges of rent for every occupancy of a hotel or motel room in the Township of Lyndhurst on or after July 1, 2003, but before July 1, 2004, and three percent on charges of rent for every occupancy of a hotel or motel room in the Township of Lyndhurst on or after July 1, 2004, of a room or rooms in a hotel subject to taxation pursuant to [the Sales and Use Tax Act].

7

Tax Act, which levied a statewide tax on "[t]he rent for every occupancy of a room or rooms in a hotel in [New Jersey]." N.J. Stat. Ann. § 54:32B-3(d). The tax was to be collected by "the person collecting rent from the hotel customer," *id.* § 40:48F-3(a), which included "every operator of a hotel," *id.* § 54:32B-2(w). Given this scheme, although the substantive reach of Lyndhurst's hotel occupancy tax remains a matter of dispute, its power to enact such a tax is not.

**B.     The Enforcement Power**

Once Lyndhurst passed its hotel occupancy tax, the Enabling Act also provided for a specific enforcement regime. By the terms of the statute, only the Director—a State of New Jersey official—is given the explicit right to enforce Lyndhurst's hotel occupancy tax: "The Director of the Division of Taxation *shall collect and administer* any tax imposed pursuant to the provisions of [§ 40:48F-1]." *Id.* § 40:48F-5 (emphasis added). Interestingly, the Enabling Act provides a distinct enforcement regime for cities of the "first class" and those of the "second class" with an international airport—as these municipalities may enforce directly their local hotel occupancy taxes. *See id.* § 40:48E-3 (outlining the enforcement regime for cities of the "first class" and cities of the "second class" with international airports). The same enforcement power is not given to other "second class" cities like Lyndhurst. As noted, this power resides with the Director.

8

"In carry[ing] out" his authority to enforce Lyndhurst's hotel occupancy tax, the Director is given "all the powers granted in" the Sales and Use Tax Act. *Id.* § 40:48F-5. This includes the power to "*determine*" the amount of tax owed by a taxpayer. *Id.* § 54:32B-19 (emphasis added). Indeed, the Act provides that, "[i]f a return required . . . is not filed, or if a return when filed is incorrect or insufficient, the amount of tax due shall be determined by the [D]irector from such information as may be available." *Id.* "[S]uch determinations shall finally and irrevocably fix the tax unless the person against whom it is assessed . . . shall apply to the [D]irector for a hearing, or unless the [D]irector of his own motion shall redetermine the same." *Id.* The Act also includes a specific mechanism for dealing with delinquent taxpayers: "Whenever any person required to collect tax shall fail to collect or pay over any tax[,] . . . the Attorney General shall, upon the request of the [D]irector, bring or cause to be brought an action to enforce the payment of same on behalf of the State of New Jersey . . . ." *Id.* at § 54:32B-22(a). In the end, the question remains whether this explicit grant of enforcement power to the Director (aided by the Attorney General) precludes Lyndhurst from bringing its own enforcement action against private parties in federal court.

## II. FACTS AND PROCEDURAL HISTORY

This case involves the propriety of the taxes owed by defendants to certain New Jersey municipalities, pursuant to the Enabling Act, under the so-called "Merchant Model"

9

employed by defendants, whereby they (1) acquire inventories of hotel rooms at negotiated rates; and then (2) rent those rooms to consumers at higher rates.[9] Lyndhurst alleges that defendants calculate the amount owed under Lyndhurst's hotel occupancy tax based on the negotiated rate paid by a defendant for rooms (the so-called "wholesale" rate), not the higher rate that the consumers are subsequently charged (the

---

[9] In its Complaint, Lyndhurst describes the "Merchant Model" as follows:

> Defendants: (i) first acquire inventories of hotel rooms at negotiated rates from hotels ("wholesale" or "net" rates); and (ii) then rent the hotel rooms to consumers at higher rates ("retail" or "marked up" rates), keeping the difference as profit. Defendants collect rent from their customers when the hotel rooms are rented from . . . [d]efendants on the [I]nternet. In addition, . . . [d]efendants charge the customer a separate amount for applicable Hotel Taxes. . . . Thereafter, when the customer checks out of the hotel, [d]efendants are either invoiced by the hotel for the net rate, or . . . [d]efendant pays the hotel the net rate through a "single use" credit card transaction. . . . The hotels then remit the amounts collected by . . . [d]efendants as "taxes" to the applicable taxing authority. . . . [T]he amount charged . . . fails to include any tax on the amount of the rent retained by . . . [d]efendant.

10

so-called "retail" rate).  Defendants then pay the tax to the hotel, which in turn remits it to the State taxing authority. Lyndhurst alleges that this scheme, which understates the amount of taxes it seeks to exact, is a form of tax evasion.

At the same time, there is no evidence in the record that the Director has ever sought to collect tax revenue under a hotel occupancy tax based on the retail rate charged to consumers by online travel booking sites.  In fact, in a letter opinion the New Jersey Division of Taxation has concluded that online booking agents are *not* subject to the hotel occupancy tax.  This was in response to a ruling request by one defendant.[10]

Lyndhurst brought this putative class action in June 2008.  It asserted claims for the collection of unpaid taxes, conversion, and unjust enrichment, as well as for the

---

[10] The parties dispute the weight that should be afforded this letter.  Defendants argue that this determination is entitled to some deference. *See Metromedia, Inc. v. Div. of Taxation*, 478 A.2d 742, 749 (N.J. 1984) (holding that the Director's interpretation "is entitled to prevail, so long as it is not plainly unreasonable").  Lyndhurst counters that the letter ruling should be afforded no deference, as it was based on *ex parte* communications by defendants' counsel, which included both factual and legal errors.  We need not resolve this dispute, as our conclusion is independent of the views expressed in the letter opinion.

imposition of a constructive trust and a declaratory judgment. In August 2008, defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and (6). In their motion, defendants argued that: 1) Lyndhurst lacked standing to bring the action; 2) the Director (who was the proper party to bring suit, with the aid of the Attorney General) had already determined that defendants were not subject to the hotel occupancy tax; 3) even if Lyndhurst had standing, it had failed to exhaust its administrative remedies; and 4) Lyndhurst's claims failed as a matter of law.

In March 2009, the District Court granted defendants' motion to dismiss for lack of subject matter jurisdiction on the prudential standing ground discussed below. It concluded that Lyndhurst was attempting to assert a legal right that was reserved to the Director (aided by the Attorney General) and not to Lyndhurst—namely, the right to enforce Lyndhurst's hotel occupancy tax by determining the amount of tax due and then collecting the related revenue. The Court did not reach the remainder of defendants' arguments.

Lyndhurst filed a timely notice of appeal.

## III. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a dismissal under Fed. R. Civ. P. 12(b)(1), and determine "whether the allegations on the face

12

of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the [D]istrict [C]ourt." *Turicento v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002).

## IV. ANALYSIS

"[T]he question of standing in the federal courts is to be considered within the framework of Article III [of the Constitution,] which restricts judicial power to 'cases' or 'controversies.'" *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 151 (1970). However, this question "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Article III standing has three elements: 1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which was (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; 2) "there must be a causal connection between the injury and the conduct complained of"; and 3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).[11] "The party invoking federal jurisdiction bears

---

[11] As the Supreme Court recently explained, "[a]lthough we have packaged the requirements of a constitutional 'case' or 'controversy' somewhat differently in the past 25 years—an era rich in three-part tests—the point has always been the same: whether a plaintiff personally would benefit in a tangible way from the [C]ourt's intervention." *Steel Co. v. Citizens for a*

13

the burden of establishing these elements." *Id.* at 561.

Nevertheless, Article III standing does not answer all questions. Even when it exists, courts at times deem it prudent not to confer standing to a plaintiff. Though we call it "prudential standing," it is actually an additional set of requirements that must be met even when standing otherwise exists. Over time, we have developed yet another three-part test for assessing when prudential standing is satisfied: 1) a plaintiff must "assert his or her own legal interests rather than those of a third party"; 2) "courts [should] refrain from adjudicating abstract questions of wide public significance amounting to generalized grievances"; and 3) "a plaintiff must demonstrate that his or her interests are arguably within the 'zone of interests' that are intended to be protected by the statute, rule, or constitutional provision on which the claim is based." *Mariana v. Fisher*, 338 F.3d 189, 204-05 (3d Cir. 2008). "Like their constitutional counterparts, these judicially

*Better Env't*, 523 U.S. 83, 104 n.5 (1998). For helpful background information on the history of standing, see generally Anthony J. Bellia Jr., *Article III and the Cause of Action*, 89 Iowa L. Rev. 777 (2004); Daniel E. Ho & Erica L. Ross, *Did Liberal Justices Invent the Standing Doctrine?: An Empirical Study of the Evolution of Standing, 1921-2006*, 62 Stan. L. Rev. 591 (2010); Elizabeth Magill, *Standing for the Public: A Lost History*, 95 Va. L. Rev. 1131 (2009); and Cass R. Sunstein, *What's Standing after* Lujan*?: Of Citizen Suits, "Injuries," and Article III*, 91 Mich. L. Rev. 163 (1992).

self-imposed limits on the exercise of federal jurisdiction are founded in concerns about the proper—and properly limited—role of the courts in a democratic society." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (internal citations and quotation marks omitted). However, "unlike their constitutional counterparts, they can be modified or abrogated by Congress." *Id.*

The District Court dismissed Lyndhurst's suit on prudential standing grounds. In particular, it concluded that Lyndhurst was not the "proper party" to bring the lawsuit and therefore ran afoul of our first prudential standing requirement. For the reasons that follow, we agree and therefore affirm.

## A.    Article III Standing

Beginning with Article III standing, there is little question that Lyndhurst satisfies "the irreducible constitutional minimum of" injury in fact, causation, and redressability. *Lujan*, 504 U.S. at 560. We consider each requirement in turn.

First, there is no dispute that the local hotel occupancy tax revenue that the Director collects belongs to the municipalities and not to the State. When those taxes are not paid in full, the municipalities suffer an injury in fact in the form of monetary harm. *See Danvers Motor Co., Inc. v. Ford Motor Co.*, 423 F.3d 268, 293 (3d Cir. 2005) ("Monetary harm is a classic form of injury in fact. Indeed, it is often

15

assumed without discussion."). As such, if Lyndhurst is correct (and it is owed additional tax revenue under its hotel occupancy tax), this constitutes both *actual* harm as to taxes that should have been remitted to it in the past and *imminent* harm with respect to taxes that should be collected for its benefit in the future.

Second, there is a causal connection between defendants' conduct and Lyndhurst's alleged harm. In Lyndhurst's view, defendants were required to pay hotel occupancy taxes on the retail price charged to their customers. Instead, they have paid taxes based only on the wholesale rates that they had initially paid for the hotel rooms. As a result, Lyndhurst contends that it has not received the full amount of taxes due under its hotel occupancy tax ordinance—an injury caused by defendants' conduct.

Finally, this alleged injury can be redressed by a favorable decision of this Court. This could be in the form of either money damages or equitable relief.

In short, Lyndhurst has succeeded in making a non-frivolous argument that it was entitled to additional tax revenue under the substantive provisions of its hotel occupancy tax ordinance. This is enough to satisfy the threshold requirements of Article III standing. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("[T]he [D]istrict [C]ourt has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the . . . laws . . . are given one construction and will be

16

defeated if they are given another, unless . . . such a claim is wholly insubstantial and frivolous." (internal quotation marks and citations omitted)).

**B.      Prudential Standing**

Turning to prudential standing, we note at the outset our reluctance to resolve this dispute. Although (overtly) an action between a township and private parties, this dispute involves decidedly local concerns that, in the interests of federal-state comity, we are hesitant to adjudicate, including: 1) a disagreement between the State and a local government over the meaning of New Jersey tax law; and 2) the relative enforcement powers delegated to these entities by the State legislature. Lyndhurst's central complaint is that defendants are not paying the full money owed to it under its hotel occupancy tax. Implicit is a further complaint that the Director has misapplied the underlying statute (or otherwise neglected his duties) by not requesting enough money from defendants. In a sense, Lyndhurst is second-guessing the Director—and, through this federal action, asking us to do the same. Though "we must be certain not to adjudicate the[se] [disputes] unnecessarily," the statutory scheme at issue in the present case is sufficiently clear to justify "wad[ing] into [this] fray[]"—albeit unenthusiastically. *Amato v. Wilentz*, 952 F.2d 742, 755 (3d Cir. 1991).

In dismissing this case on prudential standing grounds, the District Court explained that Lyndhurst was not asserting its own "legal interests" as prescribed by the statute, but

17

instead those of the Director. At first glance, this may appear an odd proposition. After all, Lyndhurst brought the current action to enforce its own (properly enacted) hotel occupancy tax. As such, one might argue that Lyndhurst had a clear "legal interest" in the tax revenue it intended to collect through this enforcement action—indeed, it was its *own* revenue under its *own* ordinance.

Taken in isolation, this is an appealing argument. However, it fails to consider the statutory scheme as a whole, and thus construes the legal interests involved too narrowly. To understand why, we must return to the specific powers granted to Lyndhurst under the Enabling Act.

A municipality "is a creature of the state and thus necessarily subordinate to its creator[,] and can exercise only such powers as may be granted to it by the Legislature." *In re Grant Charter Sch. Application of Englewood on Palisades Charter Sch.*, 727 A.2d 15, 45 (N.J. Super. Ct. App. Div. 1999). This is especially true in the area of taxation. *See, e.g.*, *Taxi's, Inc. v. E. Rutherford*, 373 A.2d 717, 723 (N.J. Super. Ct. Law Div. 1977) ("The power of taxation, a basic right of government, is vested in the Legislature and municipalities have no comparable power."). Even as the New Jersey Constitution "directs that grants of power to municipalities be construed liberally in favor of the local government," *State v. Crawley*, 447 A.2d 565, 569 (N.J. 1982), where the legislature has "adopted a series of statutes which spell out in comprehensive fashion the powers and rights of [a] municipalit[y]," those statutes "set forth the

18

*exclusive* means available to a municipality to enforce tax liabilities," *Dome Realty Inc. v. City of Paterson*, 375 A.2d 1240, 1243 (N.J. Sup. Ct. App. Div. 1977) (emphasis added). As such, "[w]hen a municipality enters the field of enforcement of tax collections[,] its power is limited by the state legislation on the subject." *Id.*; *see also Murphy v. Jos. Hollander, Inc.*, 34 A.2d 780, 783 (N.J. 1943) ("Where the [l]egislature has provided a special method for the collection of taxes, such is ordinarily an exclusive procedure, and remedies based upon general legal rules may not be invoked."); *cf. Great Adventure, Inc. v. Dir., Div. of Taxation*, 9 N.J. Tax 480, 484-85 (N.J. Tax Ct. 1988) ("Strict adherence to statutory requirements is mandated in tax matters because they involve exigencies of taxation and the administration of government.").

Given these well-established principles, Lyndhurst's enforcement power turns on the relevant powers delegated to it by the State. To repeat, the Enabling Act itself did not grant Lyndhurst any direct enforcement powers—certainly none explicitly. The New Jersey legislature's silence on this point takes on added significance when the provisions of the Enabling Act governing Lyndhurst are contrasted with those governing cities of the "first class" and those of the "second class" with an international airport. For those two groups, the principal provision reads as follows:

> The governing body of any city of the first class or the governing body of any city of the second class in which there is located a terminal of an

19

international airport may make, amend, repeal[,] and *enforce* an ordinance imposing in the city a tax, not to exceed 6%, on charges for the use or occupation of rooms in hotels[,] which tax shall be in addition to any other tax imposed by law.

N.J. Stat. Ann. § 40:48E-3 (emphasis added). The Enabling Act further provides these municipalities with the power to "*enforce* the payment of delinquent hotel occupancy taxes in the same manner as provided for municipal real property taxes." *Id.* § 40:48E-4(e) (emphasis added). At the same time, the provision governing Lyndhurst (and the putative class) allows those municipalities—"second class" cities without an international airport—to "*adopt* an ordinance imposing a tax . . . for every occupancy . . . of a room or rooms in a hotel," and nothing more. *Id.* § 40:48F-1 (emphasis added). Only the Director is given the explicit authority to "*collect and administer* any tax imposed pursuant to the provisions of [§ 40:48F-1]." *Id.* § 40:48F-5 (emphasis added).

Thus, though both §§ 40.48E-3 and 40.48F-1 permit the relevant municipalities to enact a local hotel occupancy tax ordinance, only the former allows a municipality to "enforce" such an ordinance directly. This distinction strongly suggests that, if the State legislature had intended for Lyndhurst to have a similar power to "enforce" its hotel occupancy tax, then it would have expressly granted such a power. Yet it did not do so. Instead, for Lyndhurst the power to "collect and administer" its hotel occupancy tax was

20

delegated explicitly to the Director.

In short, without the Enabling Act, Lyndhurst would have no power to enact a local hotel occupancy tax—let alone sue private parties to enforce it directly. With the Enabling Act, Lyndhurst is entitled to enact such a tax and receive related revenue, but only as dictated by the Act itself. Under it, the State legislature conditioned Lyndhurst's right to enact a local hotel occupancy tax on a specific enforcement regime—one where the Director was the exclusive decision-maker charged with *determining* the amount of tax due and then *collecting* the related revenue.[12] In short, Lyndhurst is only entitled to tax revenue under its hotel occupancy tax as

---

[12] The cases cited by Lyndhurst are not to the contrary. *See, e.g.*, *Jersey City v. Hague*, 115 A.2d 8 (N.J. 1955); *Board of Taxation of Essex County v. Town of Belleville*, 223 A.2d 359 (N.J. Super. Ct. Law Div. 1966). These cases simply show that a liberal construction of a municipal ordinance is proper when either the State statute grants certain powers to the municipality or the State legislature did not contemplate a specific context. Here, the State legislature considered the current situation (how to "collect and administer" Lyndhurst's hotel occupancy tax) and enacted a specific provision addressing it (the Director "shall collect and administer," with the aid of the Attorney General, if necessary). As the State legislature never granted Lyndhurst the power to "collect and administer" (that is, to "enforce") its hotel occupancy tax, there is nothing to construe liberally in its favor. As a result, the statute cannot be interpreted (liberally or otherwise) to give Lyndhurst implied powers that the State legislature decided not to confer on it.

21

determined by the Director—revenue that it has already received. In the current action, Lyndhurst is asking for more than the Director decided was due. This contravenes the enforcement regime enacted by the State legislature. We thus agree with the District Court that this suit must be dismissed on prudential standing grounds because "Lyndhurst is not the proper party to bring suit to enforce its ordinance created pursuant to the Enabling Act." Dist. Ct. Op. at 13. Furthermore, its attempt to do so conflicts with the Director's legal interest in fulfilling his related enforcement responsibilities.

N.J. Stat. Ann. § 40:48F-3 does not, as Lyndhurst contends, undermine this reading of the statutory scheme or our conclusion that this suit must be dismissed. That provision simply requires a municipality's chief fiscal officer to be joined as a party in any action brought by a hotel operator to collect taxes owed by a customer. It reads as follows:

> a. A tax imposed pursuant to a municipal ordinance adopted under the provision of N.J. Stat. Ann. § 40:48F-1 shall be collected on behalf of the municipality by the person collecting the rent from the hotel customer.

> b. Each person required to collect a tax imposed by the ordinance

shall be personally liable for the tax imposed, collected[,] or required to be collected hereunder. Any such person shall have the same right in respect to collecting the tax from a customer as if the tax were a part of the rent and payable at the same time; provided, however, that the chief fiscal officer of the municipality shall be joined as a party in any action or proceeding brought to collect the tax.

N.J. Stat. Ann. § 40:48F-3. Lyndhurst argues this provision demonstrates that the State legislature did not give the Director the exclusive right to enforce its hotel occupancy tax.

We disagree for the reasons already stated by the District Court. Properly understood, there are two separate "collections" under the Enabling Act. First, there is a collection of the tax from the customer by the hotel operator. Second, there is a collection of all related taxes from the hotel operator by the Director. Importantly, each hotel operator is required to remit any taxes owed to the Director, whether the operator actually receives the amount owed from its customers or not. Under § 40:48F-3, the hotel operator is "personally liable" for this tax revenue, and that provision simply permits the operator to bring suit directly against delinquent customers for the amount owed. As such,

23

§ 40:48F-3 covers a hotel operator's power to sue for a fixed amount owed (but unpaid) by a customer, not a municipality's power to bring suit on its own to enforce its ordinance directly.

Finally, Lyndhurst also argues that it has a right to enforce its hotel occupancy tax based on its general police powers. Under N.J. Stat. Ann. § 40:48-1, the State legislature granted municipalities the right to "make, amend, repeal[,] and enforce ordinances to . . . [m]anage, regulate[,] and control the finances and property, real and personal, of the municipality." Lyndhurst asserts that its hotel occupancy tax is an ordinance relating to the "manage[ment], regulat[ion][,] and control" of its finances, which Lyndhurst may "enforce" on its own, without the assistance of the Director. However, under New Jersey law there is a "clear distinction between the power of taxation for revenue and police powers which are granted for the maintenance of order and the administration of the internal affairs of a municipality." *State v. Hoboken*, 41 N.J.L. 71, 78-79 (1879); *see also Taxi's, Inc.*, 373 A.2d at 723 (distinguishing a municipality's power to tax from its general police powers). Hence, a grant of power under a municipality's general police powers does not necessarily affect its powers of taxation. Moreover, a municipality's police powers are still limited by "the laws of [New Jersey]," N.J. Stat. Ann. § 40:48-1, which include the Enabling Act. And, "[w]here the legislature has provided a special method for the collection of taxes," as in this case, that "is ordinarily an exclusive procedure, and remedies based upon general

24

legal rules may not be invoked." *Murphy*, 34 A.2d at 783.[13]

In the end, we believe that the Enabling Act provided Lyndhurst with the power to enact its hotel occupancy tax, but not to enforce it directly. This enforcement power was given to the Director alone (though assisted by the Attorney General), and included the exclusive right both to determine the amount of tax due and then to collect that amount.[14] As

---

[13] Lyndhurst contends as well that N.J. Stat. Ann. § 40:48-2.11 lends additional textual support to its argument that it can sue to enforce its own ordinances. This provision reads as follows:

> Nothing in this act shall be construed to abrogate or impair the powers of the courts or of any department of any municipality to enforce any provisions of its charter or its ordinances or regulations, nor to prevent or punish violations thereof; and the powers conferred by this act shall be in addition and supplemental to the powers conferred by any other law.

The stumbling block is again that the State legislature never granted Lyndhurst the power to enforce its hotel occupancy tax.

[14] N.J. Stat. Ann. § 40:48F-6(a), which was added to the Enabling Act after we heard oral argument, reads:

> The State Treasurer [who oversees New Jersey's Department of the Treasury, a division of which is the State's Division of Taxation] shall annually

25

such, it was for the Director—not Lyndhurst—to determine whether the difference between the wholesale rate and the retail rate was taxable under Lyndhurst's hotel occupancy tax. Since Lyndhurst is not given a similar enforcement power, it is in effect attempting to share, if not take over, the Director's role as exclusive enforcer of this tax regime—a role consciously delegated by the State legislature to the Director (aided by the Attorney General) and not to Lyndhurst. Once made, it is not our role to second-guess such a legislative determination—especially one made by the legislature of a sovereign state.

Viewed this way, this federal action is an attempted end-run around the exclusive enforcement regime enacted by the New Jersey legislature, with Lyndhurst asking us to insert ourselves into this dispute as a means of circumventing the

provide to a municipality that has adopted an ordinance imposing the tax pursuant to [§ 40:48F-1] written notification of nonpayment by a hotel or motel of taxes required to be paid under the ordinance. The written notification required by this section shall also authorize the municipality to act as the collection agent for the outstanding balance of taxes due and owing to it in place of the State Treasurer.

We do not find this provision to grant Lyndhurst any direct power to enforce its hotel occupancy tax.

26

Director.  We refuse to do so.

\* \* \* \* \*

For these reasons, we affirm the District Court's judgment and dismiss this action with prejudice.[15]  Although Lyndhurst undoubtedly has a legal interest in receiving tax revenue from its local hotel occupancy tax, the State has delegated the task of determining the amount of tax due (as well as its collection) to its Director of Taxation (assisted by its Attorney General).  Therefore, any effort by Lyndhurst to bring in federal court a direct enforcement action against private parties is an attempt to assert the "legal interests . . . of a third party"—namely, those of the Director—in determining the amount of tax due and collecting the related revenue.  Any disagreement with this arrangement must be voiced in the halls of the State Capitol in Trenton, not the chambers of this Court.[16]

---

[15] We asked the parties to offer supplemental briefing on whether Lyndhurst had the legal capacity to bring this suit.  *See* Fed. R. Civ. P. 17(b).  As we have dismissed this action on prudential standing grounds, we need not address this issue.

[16] We also deny Lyndhurst's Motion to Certify the Question to the New Jersey Supreme Court.

27