NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 10-3741

———

ELEANOR CAPOGROSSO,
Appellant

v.

30 RIVER COURT EAST URBAN RENEWAL COMPANY, ET.AL.

———

No. 10-3742

———

ELEANOR CAPOGROSSO,
Appellant

v.

STATE FARM INSURANCE COMPANY

———

On Appeal from the United States District Court for the
District of New Jersey
(District Court Nos. 07-cv-05324 & 08-cv-02229)
District Court Judge: Honorable Dennis M. Cavanaugh

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 15, 2012

Before:  SMITH, FISHER and GARTH, *Circuit Judges*.

(Filed: May 16, 2012)

———

OPINION OF THE COURT

———

GARTH, *Circuit Judge*.

Eleanor Capogrosso, a licensed attorney, appeals from the District Court's

dismissal of various complaints related to property damage allegedly suffered as a result

of an incident involving a water pipe in her apartment. Following the incident,

Capogrosso ultimately filed complaints against the United States Department of Housing

and Urban Development, her insurance company, her landlord, and the management

company responsible for her building. After the District Court dismissed her complaints

against the Department of Housing and Urban Development and her insurance company,

Capogrosso appealed those dismissals to this court. For the reasons that follow, we will

affirm the dismissal of those complaints.

I.

We write principally for the benefit of the parties and recite only the facts essential to

our disposition.

Capogrosso was a tenant in the 30 River Court building in Jersey City, New

Jersey. On January 14, 2008, she was evicted for failure to pay her rent. That building

had been financed with a mortgage insured by the Department of Housing and Urban

Development ("HUD"). According to Capogrosso's complaint, a water pipe burst in her

apartment on April 7, 2007. As a result, Capogrosso alleges that her apartment was

2

damaged and the she suffered additional property damage. Capogrosso notified her landlord of the steps she believed were necessary to mitigate the damage from the leak, and claims that her landlord failed to take those steps. She thereafter notified HUD of what she viewed as deficiencies in her landlord's conduct. HUD notified Capogrosso that they had opened a file pertaining to her case, and subsequently notified her that her case had been closed.

In addition to her interactions with her landlord, Capogrosso submitted a claim to State Farm Insurance Company under her insurance policies. State Farm inspected the apartment after the pipe had burst, and asked Capogrosso to provide an inventory of damaged property. State Farm paid for the damage to all items included in that inventory. Over a month after the pipe incident, Capogrosso asked State Farm to pay for her to stay in a hotel while repairs to damage resulting from the leak were effected in her apartment. State Farm agreed to do so, and ultimately paid for 60 days of hotel expenses, twice the amount guaranteed by Capogrosso's coverage.

On September 29, 2007, Capogrosso notified State Farm that the entire contents of her apartment had become contaminated with mold, and that she would be discarding all of her property. State Farm requested to inspect the property before Caprogrosso discarded it. The record reveals that State Farm and Capogrosso were unable to agree on the details for such inspection, and State Farm never inspected the allegedly contaminated property. State Farm asked Capogrosso to produce the property for

3

inspection on at least six occasions between November 2007 and March 2008, which she never did.

On November 7, 2007, Capogrosso filed a complaint against HUD, her landlord, and the management company responsible for her former building.[1] The only claim against HUD alleged that HUD's decision to close Capogrosso's case was arbitrary and capricious and violated the Administrative Procedures Act ("APA"). On April 2, 2008, Capogrosso filed a complaint against State Farm in New Jersey Superior Court alleging breach of contract and bad faith. After State Farm removed the complaint to the District Court, it was consolidated with the ongoing litigation against HUD and the other defendants named in the November 7, 2007 complaint.

On August 11, 2009, State Farm served a notice for Capogrosso's deposition, and subsequently requested dates on which it could inspect the allegedly damaged property. Capogrosso responded by letter stating that she "would more than like to comply in these requests," but blamed her former attorney for hindering her ability to proceed. He allegedly failed to turn over his file to Capogrosso.[2]

State Farm therefore sought an Order from the District Court compelling Capogrosso to allow inspection of the relevant property and to submit to a deposition. The District Court entered such an order on November 23, 2009, requiring Capogrosso's

---

[1] Neither Capogrosso's former landlord nor the management company are party to the present appeal.

[2] Capogrosso's attorney had withdrawn on November 10, 2008, after which time she elected to proceed *pro se*.

compliance by December 23, 2009. Between November 23 and December 11, State Farm sent Capogrosso three letters seeking to schedule the inspection and her deposition. Capogrosso did not reply.

On December 14, 2009, Capogrosso claimed medical inability to comply with the Discovery Order and filed an *ex parte* application seeking to stay the Discovery Order, which was denied on December 31 on the basis that she had not provided medical certification of her alleged inability to comply with the Order. On January 11, 2010, Capogrosso filed a motion for reconsideration of the denial of her application, once again blaming her former attorney for failing to turn over his file on her case, and submitting a certification from her dentist that he had performed root canal surgery on her "[s]hortly after Thanksgiving" and had provided her with painkillers and antibiotics as a result of that surgery. She also argued for the first time that State Farm had waived its right to inspect her property, and stated, also for the first time, that she had discarded the property in November 2008.

On December 23, 2009, the District Court dismissed Capogrosso's count against HUD for lack of standing. On February 3, 2010, State Farm moved to dismiss Capogrosso's complaint against it based on her spoliation of evidence and her failure to comply with the District Court's discovery order. The District Court granted that motion on August 26, 2010. Capogrosso timely appealed the dismissals against HUD and State Farm. Those appeals were consolidated before this court.

II.

The District Court had jurisdiction over Capogrosso's action against State Farm pursuant to 28 U.S.C. §§ 1332 and 1441. The District Court determined that it lacked jurisdiction over Capogrosso's action against HUD. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

Caprogrosso first alleges that the District Court improperly determined that she lacked standing to pursue her APA claim against HUD. Our review of a dismissal for lack of standing is plenary. Township of Lyndhurst, NJ v. Priceline.com, Inc., 657 F.3d 148, 154 (3d Cir. 2011). We can affirm such a dismissal for any reason supported by the record. Curay-Cramer v. Ursuline Academy of Wilmington, 450 F.3d 130, 133 (3d Cir. 2006).

The lone remedy Capogrosso sought in her complaint against HUD was an injunction compelling HUD "to inspect and monitor the construction and remediation of mold" in her apartment. "To seek injunctive relief, a plaintiff must show that he [or she] is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical . . . and it must be likely that a favorable judicial decision will prevent or redress the injury." Summer v. Earth Island Institute, 555 U.S. 488, 492 (2009). This requirement guarantees that standing only exists where "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." Schlesinger v. Reservists Comm. To Stop the War, 418 U.S. 208, 221 (1974). The record reveals no such need in the present case.

6

Capogrosso was evicted on January 14, 2008 from the apartment which suffered water damage as a result of the April 2007 leak. We conclude that she obviously therefore faces no threat of any harm in the absence of her requested injunction. Capogrosso contends that she is nevertheless entitled to injunctive relief because it would enable her to return to her apartment and because it would benefit the other tenants in her former building. We are unpersuaded by these arguments.

Capogrosso has provided no explanation as to why an injunction requiring HUD to supervise mold removal would enable her to return to an apartment from which she was evicted for non-payment of rent. Inasmuch as her eviction was based upon non-payment of rent beginning in February 2007, two months before the April 2007 leak, we conclude that even if Capogrosso were to prevail on her claim for injunctive relief, she nevertheless would be unable to return to her apartment. We therefore conclude that she is under no threat of suffering any injury in the absence of such relief.

Caprogrosso further argues that she has standing to pursue an injunction compelling HUD involvement with mold mitigation because of the "serious health threat" now faced by the other tenants in her former building. "The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." Warth v. Seldin, 422 U.S. 490, 499 (1975). Having already determined that Capogrosso is at no risk of injury to herself, we conclude that her claim on behalf of the other former tenants is precisely the sort of claim that does not confer standing under Warth.

7

We therefore hold that Capogrosso lacks standing to bring her claim for injunctive relief against HUD. We will therefore affirm the District Court's dismissal of Capogrosso's complaint against HUD for lack of standing.[3]

### III.

Capogrosso next claims that the District Court improperly dismissed her complaint against State Farm for spoliation of evidence and failure to comply with a Discovery Order. Such dismissals are reviewed by this court for abuse of discretion. Complaint of Consol. Coal Co., 123 F.3d 126, 131 (3d Cir. 1997); Quality Prefabrications, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 78 (3d Cir. 1982). We may reverse a decision pursuant to this standard "only when the judicial action is arbitrary, fanciful, unreasonable, or when improper standards, criteria, or procedures are used." Evans v. Buchanan, 555 F.2d 373, 378 (3d Cir. 1977). "The question . . . is not whether . . . [we] would as an original matter have dismissed the action; it is whether the district court abused its discretion in doing so." Mindek v. Rigatti, 964 F.2d 1369, 1374 (3d Cir. 1992) (quoting Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639 (1975)).

"[T]here is some authority suggesting that spoliation of evidence, and the sanctions that such spoliation may give rise to, are matters appropriately governed by state law." Schmid v. Milwaukee Electric Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994).

---

[3] On appeal, Capogrosso raises several other arguments pertaining to her complaint against HUD, but each pertains to the merits of her claim for injunctive relief. Having held that Capogrosso lacks standing to bring that claim, we need not address those arguments.

"On the other hand, there is also authority suggesting that the possible preclusion of evidence in cases such as this is governed by federal law as part of the inherent power of a district court to sanction parties." Id. We therefore consider both the law of this court and the state law of New Jersey in our discussion of spoliation and its sanctions.

Spoliation includes "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Mosaid Technologies Inc. v. Samsung Elec. Co., Ltd., 348 F.Supp.2d 332, 335 (D.N.J. 2004). In the event that a party undertakes spoilage, the sanctions available to a court include dismissal of the relevant claim or a presumption by the factfinder that the spoiled evidence was harmful to the offending party's case. See, e.g., Bull v. United Parcel Service, Inc., 665 F.3d 68, 72-73 (3d Cir. 2012); Schmid, 13 F.3d at 78 (discussing each of these sanctions in the context of spoliation).

In determining whether dismissal is appropriate, a court is to consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and . . deter such conduct by others in the future." Id. We conclude that the District Court did not abuse its discretion by dismissing Capogrosso's claims against State Farm.

First, Capogrosso disposed of property that she knew State Farm desired to inspect. Furthermore, as a licensed attorney, there can be no question that she knew the allegedly damaged property would be essential evidence in her lawsuit against State

9

Farm. In short, this court can think of no reason that justifies Capogrosso's deliberate disposal of the property.

Second, we hold that the District Court correctly concluded that Capogrosso's disposal of the property "irreparably prejudiced" State Farm. A party suffers irreparable prejudice where the other party impairs their "ability to present a defense on the merits." Gonzalez v. Safe and Sound Security Corp., 881 A.2d 719, 727 (N.J. 2005).

Finally, we conclude that no lesser sanction than dismissal is appropriate in this case. In the absence of the relevant property, Capogrosso's claim against State Farm could not survive a motion to dismiss on the merits, as she can produce no evidence that the property was in fact damaged.[4]

We therefore hold that the District Court did not abuse its discretion in dismissing Capogrosso's action.

Capogrosso also bizarrely claims that State Farm did in fact inspect her property on April 26, 2007, thus rendering any spoliation complaint baseless. This inspection took place shortly after the incident involving the pipe, fully five months before Capogrosso first claimed that all of her property was destroyed. The inspection was therefore limited

---

[4] Capogrosso also contends that State Farm waived its right to inspect the property in question by failing to mention inspection at a June 2008 scheduling conference before a Magistrate Judge. Capogrosso does not, however, cite to any authority indicating that such an omission constitutes waiver. In light of the fact that State Farm had made numerous requests to inspect the property prior to the scheduling conference, we are unpersuaded by her claim that State Farm failed to mention the inspection at the conference.

to the specific items Capogrosso initially claimed were damaged and for which State Farm reimbursed Capogrosso.[5]

IV.

The orders of the District Court dismissing Capogrosso's complaints against HUD and State Farm will be affirmed.

---

[5] Although it was not an abuse of discretion for the District Court to dismiss Capogrosso's complaint solely on the basis of spoliation, as we have held, we note that Capogrosso has never provided a satisfactory explanation for her failure to comply with the District Court's Discovery Order and its directions for inspection.